272 N.J. Super. 478 (1994)
640 A.2d 346
2175 LEMOINE AVENUE CORPORATION, PLAINTIFF,
v.
FINCO, INC., GERMANO VALLE, 2175 FINCO, AMEURO CAPITAL CORPORATION, AND MORGRAN STIFTUNG, DEFENDANTS. FINCO, INC. AND GERMANO VALLE, THIRD-PARTY PLAINTIFFS-RESPONDENTS AND CROSS-APPELLANTS,
v.
WILLIAM WATTIKER, THIRD-PARTY DEFENDANT, AND KAREN N. WATTIKER, ESQ., THIRD-PARTY DEFENDANT-APPELLANT AND CROSS-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 8, 1994.
Decided April 26, 1994.
*480 Before Judges MICHELS, SKILLMAN and KESTIN.
William B. McGuire argued the cause for appellant and cross-respondent Karen N. Wattiker (Tompkins, McGuire & Wachenfeld, attorneys; Mr. McGuire, of counsel; Marianne M. DeMarco, on the brief).
Lawrence D. Ross argued the cause for respondents and cross-appellants Finco, Inc. and Germano Valle (Bressler, Amery & Ross, attorneys; Mr. Ross, of counsel; Mr. Ross, Brian F. Amery and Jordan S. Weitberg, on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Third-party defendant Karen N. Wattiker (Ms. Wattiker) appeals and third-party plaintiffs Finco, Inc. (Finco) and Germano Valle (Valle) cross-appeal from portions of a judgment of the Law Division entered after a lengthy bench trial in this extremely complex matter. Specifically, Ms. Wattiker appeals from that portion of the judgment that awarded Finco damages in the sum of $111,283 for her legal malpractice. Finco and Valle cross-appeal from the damages portion of the judgment contending that *481 the trial court erred in failing to award them attorneys fees in connection with the underlying declaratory judgment action.[1]
The facts and procedural history giving rise to this appeal are set forth in the trial court's letter opinions of December 6, 1990 and July 19, 1991, and need not be recounted here. It is sufficient for our purposes to point out that the underlying action was instituted by plaintiff 2175 Lemoine Avenue Corporation, the owner of real property located at 2175 Lemoine Avenue, Fort Lee, New Jersey, against defendants Finco, Valle, 2175 Finco, a partnership, AmEuro Capital Corporation and Morgran Stiftung, a Lichtenstein Corporation, seeking a declaration that an option granted to Finco to purchase a fifty percent interest in the Lemoine Avenue property and the granting of a one-half of one percent interest in the 2175 Finco partnership to Finco were void and unenforceable. Plaintiff claimed generally that it was defrauded and that Finco improperly obtained the option and the partnership interest. In addition to denying the allegations of the complaint and filing a cross-claim against AmEuro Capital Corporation and a counterclaim against plaintiff, Finco and Valle filed a third-party complaint against Ms. Wattiker and her husband, third-party defendant William Wattiker, the principal stockholder of plaintiff, charging Ms. Wattiker with legal malpractice and charging both Ms. Wattiker and her husband with intentional interference with a prospective economic advantage, fraud, prima facie tort, conspiracy and defamation in connection with a loan transaction involving the Lemoine Avenue property.
*482 At the conclusion of the proofs, the trial court declared that Finco's option to purchase a fifty percent interest in the Lemoine Avenue property and Finco's interest in the 2175 Finco partnership were invalid because they violated the New Jersey Real Estate License Act, N.J.S.A. 45:15-1 et seq. In reaching this conclusion, the trial court, in part, reasoned:
To recapitulate, the Act is clear. Anyone who attempts, offers to or negotiates a loan secured by real estate is a broker. Valle certainly negotiated the terms of the 2175 loan with William Wattiker, the owner of the real estate, and with Karen Wattiker, 50% owner of AmEuro, the mortgagee. Valle certainly arranged the financing from Morgran to AmEuro. He negotiated "a loan secured or to be secured by a mortgage or other encumbrance upon or transfer of real estate for others" (N.J.S.A. 45:15-3). This activity constitutes real estate brokerage activities, and the law clearly states that "No person shall engage either directly or indirectly in the business of a real estate broker ... without being licensed to do so as herein provided." (N.J.S.A. 45:15-1, emphasis added). Merely establishing a contract between parties to a real estate transaction by an unlicensed person violates the statute. Corson v. Keane, supra[, 4 N.J. 221 [72 A.2d 314] (1950)]. Valle certainly was compensated for these activities by receipt of an option and a partnership interest in 2175.
Since neither Valle nor Finco had a New Jersey Real Estate Brokers license, they acted in violation of the Act and of the strong public policy of this State. This option, given as consideration for arranging financing is illegal and consequently cannot be enforced.
Accordingly, 2175's Declaratory Judgment action is granted, and the option is hereby declared void and unenforceable. Therefore, it is unnecessary to decide whether said option constitutes a clog on the equity of redemption. Even if the option did so, this Court will not assist a party to the illegal contract creating that clog in removing it. However, the Court is convinced the option did not create a clog.
* * * * * * * *
Here, the option is not a disguised security device. To the contrary, it was clearly given as compensation for obtaining more than 100% of the financing for 2175. Exercise of the option was not contingent upon a default. It has a fixed expiration date, as well as a price.
There is nothing unconscionable or oppressive about this option; it was just illegal! The option was granted as consideration for placing a loan to be secured by a mortgage, although the parties tried to disguise same by terming it a security, sold by AmEuro to Morgran, which claim this Court has rejected. The idea of the option and the drafting of the option was done by a New Jersey attorney, Karen Wattiker. Whether this, in and of itself, or in connection with other conduct on the part of Ms. Wattiker, is legal malpractice which entitles Valle to damages is an *483 issue to be decided infra. But it is certainly not a clog on the equity of redemption.
The trial court then dismissed Finco and Valle's claims against Ms. Wattiker and her husband for interfering with their prospective economic advantage on the ground that Valle's negotiating loans secured by mortgages required his appropriate licensure and since Valle could not legally engage in this business, Finco and Valle were barred by statute from maintaining this action. The trial court also dismissed their claims based on theories of prima facie tort, conspiracy and fraud.
However, the trial court held that Ms. Wattiker was guilty of legal malpractice in connection with the transaction. The trial court found that Ms. Wattiker "negotiated and structured the transaction on both sides, prepared all the documents, undertook responsibility for New Jersey law, and solely handled the closing" of the loan from Morgran Stiftung to plaintiff placed by Finco through AmEuro Capital Corporation. The trial court held that Ms. Wattiker "had a duty to Finco/Valle, as clients, former clients, and even as non-clients," and that she
had a duty to know the law relative to the New Jersey Brokerage Statute, N.J.S.A. 45:15-1 et seq., and to inform Valle/Finco of same and of its possible effect on the option she was preparing. Procanik by Procanik v. Cillo, 226 N.J. Super. 132, 150 [543 A.2d 985] (1988), certif. den., 113 N.J. 357 [550 A.2d 466] (1988).
Ms. Wattiker knew all the facts which might cause a violation of the statute. She had prepared three similar options for Finco, but never advised it of any potential legal difficulty, although she testified she "looked into" the law relating to brokers. The Act was in effect prior to preparation of the option. She had a responsibility to educate herself about the applicable law. Ignorance of statutes on the part of an attorney justifies a finding of negligence. By preparing an option stating that the consideration was "the placement of a first Purchase Money Mortgage", DV-86, she prepared a document invalid on its face. The ordinary, reasonably competent attorney would have known that such an option, as consideration for placement of a loan secured by real estate, would be void ab initio in New Jersey.
Various Rules of Professional Conduct as implicated here. They include RPC 1.7 Conflict of Interest: General Rule, RPC 1.8 Conflict of Interest: Prohibited Transactions and RPC 1.9 Conflict of Interest: Former Client. [Footnotes omitted].
* * * * * * * *

*484 Ms. Wattiker claims that the interests of 2175 and AmEuro in the 2175 transaction were adverse to Valle. Yet, she represented Valle simultaneously in Ocala at the same time, without seeking or obtaining Valle's consent or fully disclosing the circumstances. See RPC 1.7, which prohibits this conduct.
Karen Wattiker does not deny she repeatedly communicated with Valle throughout the 2175 transaction. Yet, she asserts that SKS [Schwartz, Klink & Shreiber, a law firm retained by Finco/Valle] represented Finco/Valle and Morgran and she did not. This is violative of R.P.C. 4.2. See Estate of Vafiades v. Sheppard Bus Service, 192 N.J. Super. 301, 314 [469 A.2d 971] (Law Div. 1983).
RPC 1.6 provides:
(a) a lawyer shall not reveal information relating to representation of a client unless the client consents after consultation ...
This Court believes that Karen Wattiker used information she learned about Valle during her representation of him and/or Morgran in efforts to damage Valle. She conveyed information to Pellaton, the IRS, and the INS.
RPC 1.8 is clearly implicated because there was a business relationship between Karen Wattiker (as 50% shareholder of AmEuro) and Finco/Valle, since AmEuro was to be the borrower of the funds from Morgran, which mortgage was being placed by Finco/Valle, and AmEuro, in turn, was lending the money to the corporation owned by William Wattiker, husband of its 50% shareholder.
Despite this business relationship, Valle was not given specific advice in regard to obtaining independent counsel, and thus did not have an opportunity to get separate New Jersey counsel.
* * * * * * * *
... However, if Karen Wattiker did not tell Valle that he needed a license in New Jersey in order to obtain the option as a commission for placing the mortgage, or as a fact that she did not know same, and thus could not tell him, his signature cannot be the equivalent of written consent.
If Karen Wattiker's statement, that when she prepared the option on the 2175 deal, she had "no inkling" that it might not be enforceable, is to be taken at face value, it is obvious that she did not reach the minimum level of competency to which attorneys of the State of New Jersey are held; Mr. Trombadore's opinion to the contrary notwithstanding. A cursory review of the law applicable to commissions paid for placing of mortgages would indicate that one who is not a licensed broker is not entitled to receive a commission for the placing of a mortgage. Karen Wattiker did no research in 1986 when the 2175 deal was being closed on mortgage banking, placing mortgages, or the broker statute similar to that that she did in 1985. Having done no research, she prepared an option which was, on its face, ab initio, illegal. Any discussion that the option was not given for placing of the mortgage because AmEuro was the lender and AmEuro was selling mortgaged backed securities to Morgran begs the question.
In declining to accept responsibility for failing to research the appropriate law, it is Ms. Wattiker's contention that AmEuro took the mortgage back from 2175 and then sold mortgage-backed securities to Morgran, which securities were backed by *485 mortgages to be assigned. This is a subterfuge. It is clear that Valle located the funds in Europe, arranged for the money to go to AmEuro, who, in turn, lent it to 2175 and other borrowers in New Jersey, and it is clear the option was consideration for these services.
At the conclusion of the damage proofs, the trial court found that Finco had sustained damages in the sum of $111,283 as a result of Ms. Wattiker's legal malpractice. The trial court found that this sum represented the value of Finco's option to purchase fifty percent of plaintiff, and entered judgment accordingly in favor of Finco and against Ms. Wattiker. This appeal and cross-appeal followed.
Ms. Wattiker seeks a reversal of that portion of the judgment that awarded Finco damages for her legal malpractice. She contends that the award of damages was unwarranted and raises the following issues: (1) the trial court abused its discretion in allowing Finco to reopen its case to present intentionally omitted expert testimony as to her legal malpractice; (2) the trial court erred in granting Finco a post-evidentiary hearing to present proof of damages on a legal malpractice claim which Finco had failed to proffer before the close of the non-bifurcated bench trial; (3) the trial court erred in awarding Finco damages on its legal malpractice claim because it failed to recognize that N.J.S.A. 45:15-1 et seq. not only compelled the voiding of the option but also precluded Finco from recovering indirect compensation for brokerage services in the guise of tort damages; (4) the trial court erred in failing to ascertain whether Finco had complied with all requirements of N.J.S.A 14A:13-20c(2) before allowing the out-of-state corporation to proceed at the post-trial damage hearing; (5) the damages awarded to Finco on its legal malpractice claim must be reversed as a miscarriage of justice since the trial court erroneously applied the doctrine of judicial estoppel in making this award (not raised below); (6) the trial court's findings of fact regarding the reliance of Finco on Ms. Wattiker with respect to the validity of the option are not supported by sufficient credible evidence in the record (not raised below); and (7) the trial court abused its discretion in disregarding the expert testimony of *486 Raymond R. Trombadore, Esq. which indicated that a reasonably prudent attorney would not have considered N.J.S.A. 45:15-3 in preparing an option such as that which is at issue in this case (not raised below).
We first turn to the pivotal issue of whether the trial court properly found that Ms. Wattiker was guilty of legal malpractice in connection with the loan transaction involving the Lemoine Avenue property. We emphasize that the standard of care governing New Jersey attorneys in the practice of their profession was set forth with clarity in McCullough v. Sullivan, 102 N.J.L. 381, 384, 132 A. 102 (E. & A. 1926), as follows:
A lawyer, without express agreement, is not an insurer. He is not a guarantor of the soundness of his opinions, or the successful outcome of the litigation which he is employed to conduct, or that the instruments he will draft will be held valid by the court of last resort. He is not answerable for an error of judgment in the conduct of a case or for every mistake which may occur in practice. He does, however, undertake in the practice of his profession of the law that he is possessed of that reasonable knowledge and skill ordinarily possessed by other members of his profession. He contracts to use the reasonable knowledge and skill in the transaction of business which lawyers of ordinary ability and skill possess and exercise. On the one hand he is not to be held accountable for the consequences of every act which may be held to be an error by a court. On the other hand, he is not immune from the responsibility, if he fails to employ in the work he undertakes that reasonable knowledge and skill exercised by lawyers of ordinary ability and skill. The duties and liabilities between an attorney and his client are the same as those between a physician and his patient. Both the attorney and physician are required to exercise that reasonable knowledge and skill ordinarily possessed and exercised by others in their respective professions.
This standard is still applied by our courts. See, e.g., Ziegelheim v. Apollo, 128 N.J. 250, 260-61, 607 A.2d 1298 (1992); St. Pius X House of Retreats v. Camden Dioc., 88 N.J. 571, 588, 443 A.2d 1052 (1982); Gautam v. De Luca, 215 N.J. Super. 388, 396-97, 521 A.2d 1343 (App.Div. 1987); Lamb v. Barbour, 188 N.J. Super. 6, 12, 455 A.2d 1122 (App.Div. 1982), certif. denied, 93 N.J. 297, 460 A.2d 693 (1983); Stewart v. Sbarro, 142 N.J. Super. 581, 590, 362 A.2d 581 (App.Div.), certif. denied, 72 N.J. 459, 371 A.2d 63 (1976); Passanante v. Yormark, 138 N.J. Super. 233, 238, 350 A.2d 497 (App.Div. 1975), certif. denied, 70 N.J. 144, 358 A.2d 191 (1976); *487 Taylor v. Shepard, 136 N.J. Super. 85, 90, 344 A.2d 344 (App.Div. 1975), aff'd o.b., 70 N.J. 93, 357 A.2d 765 (1976).
Application of this standard here compels the conclusion that substantial credible evidence exists in the record as a whole to support the trial court's findings and conclusion that Ms. Wattiker was guilty of legal malpractice in connection with the loan transaction involving the Lemoine Avenue property. There is no sound reason or justification for us to interfere with that decision by the trial court in this non-jury case. See Leimgruber v. Claridge Assocs., Ltd., 73 N.J. 450, 455-56, 375 A.2d 652 (1977); Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 483-84, 323 A.2d 495 (1974); State v. Johnson, 42 N.J. 146, 161-62, 199 A.2d 809 (1964). See also R. 2:11-3(e)(1)(A). Therefore, Ms. Wattiker's challenge to these findings and conclusions are clearly without merit. R. 2:11-3(e)(1)(E). Accordingly, we affirm the trial court's findings and conclusions that Ms. Wattiker was guilty of legal malpractice substantially for the reasons expressed by the trial court in its letter opinion of December 6, 1990.
While we agree that Ms. Wattiker was guilty of legal malpractice in connection with the loan transaction involving the Lemoine Avenue property, we further hold that the trial court erred in awarding Finco damages for the loss it claimed to have sustained by reason of such legal malpractice. In our view, Finco failed to prove an essential element of the cause of action, to wit, that Ms. Wattiker's legal malpractice was a proximate cause of Finco's loss.
The general rule in this State is that an attorney is only responsible for a client's loss if that loss is proximately caused by the attorney's legal malpractice. Gautam v. De Luca, supra, 215 N.J. Super. at 397, 521 A.2d 1343; Lamb v. Barbour, supra, 188 N.J. Super. at 12, 455 A.2d 1122. The test of proximate cause is satisfied where the negligent conduct is a substantial contributing factor in causing the loss. See State v. Jersey Central Power & Light Co., 69 N.J. 102, 110, 351 A.2d 337 (1976); Ettin v. Ava Truck Leasing, Inc., 53 N.J. 463, 483, 251 A.2d 278 (1969); Lamb v. Barbour, supra, 188 N.J. Super. at 12, 455 A.2d 1122. The *488 burden is on the client to show what injuries were suffered as a proximate consequence of the attorney's breach of duty. Lieberman v. Employers Ins. of Wausau, 84 N.J. 325, 341, 342, 419 A.2d 417 (1980); Gautam v. De Luca, supra, 215 N.J. Super. at 397, 521 A.2d 1343; Lamb v. Barbour, supra, 188 N.J. Super. at 12, 455 A.2d 1122; see also Carmel v. Clapp & Eisenberg, P.C., 960 F.2d 698, 703-4 (7th Cir.1992); 7 Am.Jur.2d, Attorneys at Law § 223 at 266 (1980). That burden must be sustained by a preponderance of the competent, credible evidence and is not satisfied by mere "conjecture, surmise or suspicion." Long v. Landy, 35 N.J. 44, 54, 171 A.2d 1 (1961); Lamb v. Barbour, supra, 188 N.J. Super. at 12, 455 A.2d 1122. In the context of this case, the measure of damages is ordinarily the amount that a client would have received but for the attorney's negligence. Lieberman v. Employers Ins. of Wausau, supra, 84 N.J. at 341-42, 419 A.2d 417; Gautam v. DeLuca, supra, 215 N.J. Super. at 397, 521 A.2d 1343.
In the underlying declaratory judgment action instituted by plaintiff against Finco and Valle, the trial court held that the option and partnership interest granted to Finco as compensation for the brokerage services it rendered through its principal, Valle, in connection with the Lemoine Avenue property transaction were void and unenforceable because neither Finco nor Valle were licensed real estate brokers in this state in accordance with the Real Estate License Act. See N.J.S.A. 45:15-1 and N.J.S.A. 45:15-3. See also Tanenbaum v. Sylvan Builders, Inc., 50 N.J. Super. 342, 353-54, 142 A.2d 247 (App.Div. 1958), modified on other grounds, 29 N.J. 63, 148 A.2d 176 (1959). Nonetheless, the trial court awarded Finco damages against Ms. Wattiker equivalent to the value of Finco's option. The trial court assumed that the transaction involving the Lemoine Avenue property could have been structured in such a way that Finco legally could have recovered the equivalent of the brokerage commission in the form of an option agreement and partnership interest, despite the violation of the Real Estate License Act. Thus, the trial court ostensibly concluded that there was a proximate cause between Ms. Wattiker's legal malpractice and the damages sustained by *489 Finco. Ms. Wattiker contends that the trial court erred in awarding damages because the trial court in effect allowed Finco to recover compensation for the performance of unlicensed brokerage services, which is expressly proscribed by N.J.S.A. 45:15-1 and N.J.S.A. 45:15-3. See also Tanenbaum v. Sylvan Builders, Inc., supra, 50 N.J. Super. at 354-56, 142 A.2d 247.
We need not decide whether Finco's legal malpractice action "amounted to an effort to recover compensation on an illegal contract under the guise of an alternatively stated claim," as claimed by Ms. Wattiker because the trial court's assumption that there were legitimate means for structuring this agreement is not supported by the record. Its conclusion in this regard is pure conjecture and surmise. In fact, the trial court failed to provide any example of how the granting of an option and interest to Finco could have been legally structured so that it would not violate the Real Estate License Act. Rather, the trial court disposed of the essential proximate cause issue in a rather summary and conclusory manner, simply stating:
[T]he Court rejects Karen Wattiker's argument that since Valle would never have qualified to be licensed as a mortgage broker under the [Real Estate License] Act, there can be no damages proximately caused by Karen Wattiker's negligence in drafting the option as consideration for placing the mortgage. This is a specious argument which must be rejected. First of all, Karen Wattiker has to be presumed to have the minimum legal capacity of similarly situated attorneys. Minimal legal research would have determined that the Act required a license to place mortgages, and the requirements for holding such a license. Once Karen Wattiker learned that simple legal concept, certainly other means of compensating Valle for his services could have been devised which were legal, above board and in keeping with the extraordinary services he rendered to 2175 in obtaining more than 100% of financing. Since Karen Wattiker negligently drafted the option, she is responsible for damages.
In support of this conclusion, Finco now suggests that there were ways in which Ms. Wattiker could have legally structured the transaction. For example, Finco claims that Ms. Wattiker could have timely formed the 2175 Finco partnership, thus making Finco an owner of the 2175 property qualifying for the owner's exemption of the Real Estate License Act under N.J.S.A. 45:15-4, or Ms. Wattiker could have had Finco simply pay for the *490 option. Despite the suggestions asserted in its brief, Finco did not present any evidence during the lengthy trial to support these claims or to establish or even suggest how the transaction regarding the granting of the option and partnership interest could have been structured in a legal manner so that it would not violate the letter and strong public policy of the Real Estate License Act. Expert testimony may not be appropriate or necessary to establish proximate cause in every legal malpractice case, particularly where the causal relationship between the attorney's legal malpractice and the client's loss is so obvious that the trier of fact can resolve the issue as a matter of common knowledge. However, such is not the case here. In our view, legal expert testimony was necessary to show that the complex commercial transaction involving the Lemoine Avenue property could have been legally structured to permit Finco to receive the option and the partnership interest. Finco failed to present such testimony and, therefore, failed to prove the essential element of proximate cause in its legal malpractice cause of action against Ms. Wattiker.
Beyond this, even assuming that the transaction could have been legally structured, there is no proof in this record that Finco and William Wattiker were willing or able to do so. For example, Finco suggests now that Ms. Wattiker could have timely formed the 2175 Finco partnership, thus making Finco an owner of the Lemoine Avenue property and thereby qualifying Finco for the owner's exemption under N.J.S.A. 45:15-4 of the Real Estate License Act. However, no evidence in this record demonstrates that either Finco or William Wattiker were willing to structure the agreement in such a manner. Additionally, the record does not indicate that William Wattiker was interested in or was even willing to create a partnership with Finco which would give Finco an ownership interest in the Lemoine Avenue property from the inception of the transaction. Moreover, while Finco also suggests that Ms. Wattiker could have had Finco simply pay for an option to purchase an interest in the Lemoine Avenue property, the record is barren of any evidence that Finco was willing to do so, or *491 that such a solution would achieve the apparent purpose of compensating Valle.
In sum, there is simply no evidential support in this record for the trial court's conclusory statement that "certainly other means of compensating Valle for his services could have been devised which were legal, above board and in keeping with the extraordinary services he rendered to 2175 in obtaining more than 100% of financing." Consequently, Finco failed to prove the essential element of proximate cause in its legal malpractice claim against Ms. Wattiker, requiring a reversal of the damage award. Since we reverse the portion of the judgment awarding Finco damages for Ms. Wattiker's malpractice, we need not consider, nor do we decide, the other issues raised by Ms. Wattiker on this appeal or the attorneys fees issue raised by Finco and Valle on the cross-appeal.
Accordingly, that portion of the judgment awarding Finco damages in the sum of $111,283 as a result of Ms. Wattiker's legal malpractice is reversed.[2]
NOTES
[1] Third-party plaintiffs Finco, Inc. (Finco) and Germano Valle (Valle) also cross-appealed from those portions of the judgment that (1) dismissed their third-party complaint against third-party defendants Karen N. Wattiker and William Wattiker, (2) dismissed their counterclaim against plaintiff 2175 Lemoine Avenue Corporation and dismissed their crossclaim against defendant AmEuro Capital Corporation based on theories of intentional interference with prospective economic advantage, fraud, prima facie tort and conspiracy. However, with respect to these claims, Finco and Valle withdrew their cross-appeal against Ms. Wattiker and their direct appeal against the other parties, including William Wattiker.
[2] The Clerk of the Appellate Division is directed to forward forthwith a copy of this opinion and the entire file in this matter, including all transcripts, to David E. Johnson, Jr., Esq., Director, Office of Attorney Ethics, Administrative Office of the Courts, Hughes Justice Complex, CN-963, Trenton, New Jersey 08625, for review and such action as is deemed appropriate.