**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4067-16T2

PAUL WIEBEL,

     Plaintiff-Appellant,

v.

MORRIS, DOWNING & SHERRED,
LLP and DAVID JOHNSON, ESQ.,

     Defendants-Respondents.

_____

Argued November 13, 2018 – Decided December 6, 2018

Before Judges Haas, Sumners, and Mitterhoff.

On appeal from Superior Court of New Jersey, Law Division, Sussex County, Docket No. L-0681-14.

Peter A. Ouda argued the cause for appellant.

Marshall D. Bilder argued the cause for respondents (Eckert, Seamans, Cherin & Mellott, LLC, attorneys; Christopher J. Carey and Venanzio E. Cortese, on the brief).

PER CURIAM

Plaintiff Paul Wiebel appeals from the Law Division's May 25, 2017 order granting summary judgment to defendants Morris, Downing & Sherred, LLP and David Johnson and dismissing his legal malpractice complaint with prejudice. We affirm.

I.

We summarize the following facts from the record, viewing "the facts in the light most favorable to [plaintiff,] the non-moving party." Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016) (citing R. 4:46-2(c)). Defendant David Johnson has been a partner at Morris, Downing & Sherred since 1980. Plaintiff and Johnson have had a longstanding professional relationship for roughly twenty-five years on a variety of business matters, some in which Johnson served as plaintiff's attorney and others in which Johnson loaned money to plaintiff or to businesses in which plaintiff had invested. The disputes in this case arise from plaintiff and Johnson's investments in Destiny Plastics, Inc. ("Destiny"), a Nevada corporation with operations and officers in Orange County, California.

On March 25, 2002, Destiny and A-1 Business Products, Inc., d/b/a Premium Financial Services ("A-1") entered into a factoring and security agreement ("the factoring agreement"), by which A-1 purchased the rights to

accounts receivable of Destiny. In 2003, plaintiff purchased one-third of Destiny's stock for $1.2 million and loaned it $2.5 million. On March 24, 2003, plaintiff executed a personal guaranty in favor of A-1 in exchange for A-1's continued financial support of Destiny ("the A-1 guaranty"). Prior to executing the A-1 guaranty, plaintiff retained defendants to review the guaranty agreement.

On October 27 2003, Johnson, as the sole member of Jawbone, LLC ("Jawbone"), executed a sale, lease and repurchase agreement with Destiny, regarding molds for plastic products. Per this agreement, Jawbone loaned Destiny $430,000 "to commence and complete the manufacture of, and to acquire title to, a mold for plastic cutlery manufactured to specifications satisfactory to Destiny." The agreement included a personal guaranty signed by plaintiff as an inducement for Jawbone to enter into the agreement. Plaintiff also agreed to indemnify Johnson for any defense costs if litigation ensued.

In 2006, plaintiff discovered that Destiny's controlling shareholder, director, and CEO had been fraudulently misrepresenting Destiny's financial condition. After this discovery, the CEO initiated three frivolous retaliatory lawsuits on behalf of Destiny against plaintiff and others, including Johnson and

3

Jawbone, in California ("the Destiny actions").[1]  Plaintiff hired Winston & Strawn, LLP ("Winston & Strawn"), a California law firm, and Greenberg Rowe Smith & Davis, LLP ("Greenbaum Rowe"), a New Jersey law firm, to represent plaintiff, Johnson, and Jawbone in the Destiny actions.

Thereafter, Winston & Strawn engaged in extensive settlement negotiations with counsel for Destiny to settle all claims in the Destiny actions. From January to July 2007, attorneys from Winston & Strawn circulated drafts of a proposed settlement agreement via email to plaintiff and Johnson.  Johnson responded to some of these emails with questions or comments.  For example, on April 24, 2007, Johnson emailed an attorney from Winston & Strawn about concerns with language in the proposed settlement agreement, stating: "[I]f you feel my prior comments have merit, <u>those involved in negotiating and drafting the agreement</u> should address those points and cause the language to be revised to eliminate the ambiguities and conflicting terms, and address the other issues raised." (emphasis in original).

Eventually, the parties executed a final settlement agreement on November 26, 2008.  The agreement called for Destiny and its CEO to pay

---

[1]  Three other lawsuits were filed in New Jersey and Nevada over the parties' disputes.

A-4067-16T2

$750,000 to plaintiff and for plaintiff to relinquish his stock in Destiny. The agreement also dismissed the claims the parties had against each other in California and New Jersey and resolved a number of other contractual issues between the parties.

Billing records indicate that defendants billed plaintiff for legal work related to Destiny during this time period. Defendants billed plaintiff for "Destiny Matters" in October and November 2016, for telephone conferences with Winston & Strawn in January 2007, for telephone conferences with plaintiff regarding Destiny issues in February and March 2007, and for review of correspondence from Winston & Strawn regarding terms of the settlement agreement in April and May 2007. Throughout 2008, defendants billed plaintiff for research, strategy, and litigation to domesticate the settlement agreement in New Jersey.[2]

In 2008, A-1 discovered that Destiny was in breach of the factoring agreement. On November 10, 2008, A-1 sent Destiny and plaintiff a letter titled

---

[2] Winston & Strawn terminated its representation of plaintiff in April 2008 due to nearly $200,000 in outstanding legal fees. On August 15, 2008, Winston & Strawn sued plaintiff in California for unpaid legal fees. Plaintiff filed a cross-complaint against Winston & Strawn for legal malpractice, breach of fiduciary duty, and breach of contract. On January 31, 2011, Winston & Strawn and plaintiff settled, with plaintiff agreeing to pay Winston & Strawn $65,000 for the dismissal of the parties' claims against each other.

A-4067-16T2

"notice of termination and demand for payment-factoring agreement," demanding $1,324,801.64 due under the terms of the factoring agreement. The letter is stamped as received on November 13, 2008. On July 18, 2012, A-1 filed an action against plaintiff in California for breach of the A-1 guaranty ("the guaranty action"), which arose from Destiny's breach of the factoring agreement, seeking damages of $2,575,062.39. Plaintiff retained a different California attorney to represent him in the guaranty action.

In a California bench trial held in August 2014, plaintiff argued that A-1's claim against him was time-barred under California's four-year statute of limitations for actions arising from written contracts. The court held that the statute of limitations for A-1's claim against Destiny for breach of the factoring agreement began to run on July 11, 2008, when "the information available to A-1 . . . was sufficiently problematic" to put A-1 on notice of the default of the factoring agreement. Accordingly, A-1's complaint, filed on July 18, 2012, was untimely. The court, however, held that plaintiff waived the statute of limitations through an August 10, 2010 email from his attorney to counsel for A-1. Because of plaintiff's waiver, a jury trial was held in October and November 2014, with the jury returning a verdict in favor of A-1 for $871,803.[3]

---

[3] A-1 and plaintiff later settled this judgment.

## II.

On November 10, 2014, plaintiff filed the complaint against defendants in this case, alleging legal malpractice, breach of fiduciary duty, and breach of contract. Plaintiff alleged that, notwithstanding the fact that Johnson was a co-defendant in the Destiny actions, Johnson acted as his attorney in negotiating the settlement agreement and negligently failed to ensure that the A-1 guaranty was extinguished by the settlement agreement. On September 15, 2015, defendants filed an answer denying the allegations. Defendants then filed a motion for summary judgment on December 16, 2016, which plaintiff opposed. On January 6, 2017, the trial court denied the motion without prejudice to allow plaintiff to take Johnson's deposition.

Defendants moved for reconsideration of the denial of summary judgment on February 3, 2017. Before the trial court rendered a decision on the motion for reconsideration, defendants withdrew the motion and filed a new motion for summary judgment on April 25, 2017, which plaintiff also opposed. On May 19, 2017, the trial court held a case management conference and ordered the following: fact depositions to be completed by September 19, 2017; plaintiff to provide a supplemental expert report, if necessary, by October 27, 2017; defendant to submit an expert report by November 30, 2017; expert deposition

7

to be completed by January 15, 2018; and all discovery to be completed by January 31, 2018.

On May 25, 2017, the trial court held oral argument on defendant's April 25, 2017 motion for summary judgment and rendered an oral decision granting the motion. First, the trial court held that the statute of limitations began to run on November 13, 2008, when plaintiff received notice of A-1's demand for payment, and that plaintiff timely filed a malpractice complaint against defendants under New Jersey's six-year statute of limitations. Next, the court found that there was an issue of material fact as to whether an attorney-client relationship existed between plaintiff and Johnson, citing "several emails in which Johnson was holding himself out as an attorney acting on behalf of plaintiff" and records showing that defendants billed plaintiff "for work conducted on the Destiny litigation from a period beginning around October 12, 2006 through October of 2008."

The trial court, however, held that plaintiff was unable to establish proximate causation because of plaintiff's waiver of the statute of limitations in the guaranty action. The court reasoned: "The statute of limitations on the guaranty claim had expired. Plaintiff was no longer subject to any obligation under the guarant[y] as a matter of law. However, plaintiff waived this defense

thereby renewing his obligation under the A-1 guarant[y]." Additionally, the trial court held that plaintiff's expert, Barry E. Levine, Esq., issued a net opinion with regard to causation, noting that the expert's report did not discuss plaintiff's waiver of the statute of limitations in the A-1 action. For these two reasons, the trial court granted defendants' motion for summary judgment.

On appeal of the trial court's grant of summary judgment, plaintiff raises the following points for our review:

> [POINT I] SUMMARY JUDGMENT WAS IMPROPERLY DENIED AS THERE WERE GENUINE ISSUES OF FACT AS TO WHETHER THE PLAINTIFF WAIVED THE STATUTE OF LIMITATIONS DEFENSE IN THE UNDERLYING LAWSUIT.
>
> POINT II SUMMARY JUDGMENT WAS IMPROPERLY GRANTED BECAUSE DISCOVERY HAD BEEN EXTENDED BY THE COURT.
>
> POINT III SUMMARY JUDGMENT WAS INAPPROPRIATE BECAUSE OF THE ERRONEOUS CONCLUSION THAT BARRY E. LEVINE ISSUED A NET OPINION.

We review a grant of summary judgment de novo, applying the same standard as the trial court. Henry v. N.J. Dep't of Human Servs., 204 N.J. 320, 330 (2010). Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). The court considers whether "the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

Having reviewed the record and applicable legal principles, we agree with the trial court that plaintiff's expert issued a net opinion with respect to causation and that plaintiff cannot establish proximate causation as a matter of law. For these reasons, we find that the trial court properly granted summary judgment to defendants.

### III.

Although not in the order raised by plaintiff, we first turn to plaintiff's contention that the trial court erroneously concluded that plaintiff's expert issued a net opinion with respect to causation. Plaintiff argues that Levine's expert report was focused on the issue of attorney-client relationship and was subject to amendment after further fact depositions were completed. He argues that the trial court improperly struck Levine's opinion with respect to causation, because

10

Levine could have amended that portion of his opinion after the close of discovery. We reject plaintiff's arguments.

"The admission or exclusion of expert testimony is committed to the sound discretion of the trial court." Townsend v. Pierre, 221 N.J. 36, 52 (2015) (citation omitted). N.J.R.E. 703 requires that an expert opinion be based on "facts or data . . . perceived by or made known to the expert at or before the hearing." N.J.R.E. 703. "The net opinion rule is a 'corollary of [N.J.R.E. 703] . . . which forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data.'" Townsend, 221 N.J. at 53-54 (alteration in original) (quoting Polzo v. Cty. of Essex, 196 N.J. 569, 583 (2008); see also Kaplan v. Skoloff & Wolfe, P.C., 339 N.J. Super. 97, 103-04 (App. Div. 2001) (holding that trial court properly excluded expert report in legal malpractice action where expert failed to reference any evidential support of duty of care).

Applying these standards, we conclude that plaintiff's expert issued net opinions with respect to breach, causation, and damages. While Levine did discuss the underlying factual basis for his opinion on the issue of the attorney-client relationship between plaintiff and Johnson, he failed to do so on the issues of breach, causation, and damages. With regard to these issues, Levine merely

11

provided brief statements of the law, repeated the allegations in plaintiff's complaint, and made bare conclusions. See Buckelew v. Grossbard, 87 N.J. 512, 524 (1981) ("[A]n expert's bare conclusions, unsupported by factual evidence, is inadmissible."). Indeed, as noted by the trial court, the expert failed to address plaintiff's waiver of the statute of limitations in the A-1 action, which is an essential fact to the issue of proximate causation.[4] For these reasons, we find that it was well within the trial court's discretion to strike Levine's opinion on causation as a net opinion.

We next turn to plaintiff's contention that the trial court erred in holding that plaintiff could not establish proximate causation as a matter of law. Plaintiff argues that the trial court improperly resolved issues of disputed fact in concluding that plaintiff was unable to establish proximate causation because of his waiver of the statute of limitations in the A-1 action. He contends: "A fact-finder could find that Johnson's negligence caused the guaranty suit in the first place, (which it did) and that the fees incurred by [c]ounsel are an element of

---

[4] To the extent that plaintiff suggests that Levine could amend his expert report to address these deficiencies, we note that Levine was aware of the issue of the waiver of the statute of limitations in the A-1 action from the documents he reviewed, but failed to mention this issue in his report. See Townsend, 221 N.J. at 57 (finding expert issued net opinion on causation where opinion "diverged from the evidence").

damages that are recoverable irrespective of the outcome of the statute of limitations motion." He also argues that defendants face the burden of establishing that A-1 would have filed outside of the statute of limitations even if his attorney in the guaranty actions had not inadvertently waived the statute of limitations. We reject plaintiff's arguments.

To establish proximate causation, a plaintiff must first establish causation in fact, which "requires proof that the result complained of probably would not have occurred 'but for' the negligent conduct of the defendant." Conklin v. Hannoch Weisman, 145 N.J. 395, 417 (1996) (quoting Vuocolo v. Diamond Shamrock Chemicals Co., 240 N.J. Super. 289, 295 (App. Div. 1990)). Additionally, a plaintiff "must present evidence to support a finding that defendant's negligent conduct was a 'substantial factor' in bringing about plaintiff's injury, even though there may be other concurrent causes of the harm." Froom v. Perel, 377 N.J. Super. 298, 313 (App. Div. 2005) (quoting Conklin, 145 N.J. at 419). Stated differently, proximate cause is "any cause which in the natural and continuous sequence, unbroken by an efficient intervening cause, produces the result complained of and without which the result would not have occurred." Dawson v. Bunker Hill Plaza Assocs., 289 N.J. Super. 309, 322 (App. Div. 1996) (quotation omitted).

Additionally, "in cases involving transactional legal malpractice, there must be evidence to establish that the negligence was a substantial factor in bringing about the loss of a gain or benefit from the transaction." Froom, 377 N.J. at 315. A plaintiff who alleges an attorney failed to take steps to protect his or her interest in a transaction "must present evidence that, even in the absence of negligence by the attorney, the other parties to the transaction would have recognized plaintiff's interest and plaintiff would have derived a benefit from it." Ibid. (citation omitted).

The burden is on the plaintiff to establish proximate causation "by a preponderance of the competent, credible evidence and is not satisfied by mere 'conjecture, surmise or suspicion.'" 2175 Lemoine Ave. Corp. v. Finco, Inc., 272 N.J. Super. 478, 488 (App. Div. 1994) (quoting Long v. Landy, 35 N.J. 44, 54 (1961)). Although issues of proximate causation are typically for the jury to resolve, "a court may decide the issue as a matter of law where 'no reasonable jury could find that the plaintiff's injuries were proximately caused' [by the defendant's conduct.]" Broach-Butts v. Therapeutic Alternatives, Inc., 456 N.J. Super. 25, 40 (App. Div. 2018) (quoting Vega by Muniz v. Piedilato, 154 N.J. 496, 509 (1998)).

In this case, we agree with the trial court that plaintiff cannot establish proximate causation as a matter of law. Even viewing the evidence in the light most favorable to him, plaintiff submits no evidence supporting that the parties in the Destiny actions would have agreed to extinguish the A-1 guaranty as part of the settlement agreement. Indeed, A-1 was not a party to the Destiny actions. Without such evidence, plaintiff is unable to establish that Johnson's alleged negligence in advising plaintiff about the settlement agreement was a substantial factor in causing plaintiff's damages resulting from the guaranty action. See Froom, 377 N.J. at 315-16 (holding that plaintiff had not established proximate causation where no evidence showed that other parties would have agreed to give plaintiff his desired ownership interest in property development); Finco, 272 N.J. Super. at 487-91 (holding that plaintiff had not established proximate causation because plaintiff did not present sufficient evidence supporting that other parties to real estate transaction were willing to include plaintiff's desired terms in agreement).

Further, in legal malpractice cases, proximate causation must ordinarily be established by expert testimony. See Froom, 377 N.J. Super. at 318 (holding that expert testimony was required on the issue of proximate causation where the legal transaction involved "a complex real estate acquisition and

15

development"); <u>Finco</u>, 272 N.J. Super. at 490 (holding that expert testimony was required to establish proximate causation in legal malpractice case involving complex commercial transaction); <u>Vort v. Hollander</u>, 257 N.J. Super 56, 61 (App. Div. 1992) (holding that expert testimony was required to establish proximate causation in legal malpractice case). As discussed above, plaintiff's expert issued an inadmissible net opinion with respect to proximate causation and failed to address whether plaintiff's waiver of the statute of limitations in the guaranty action severed the chain of causation. In legal malpractices cases involving complex transactions and litigation, such as this case, expert testimony addressing the particular facts of the case is necessary to aid the trier of fact in determining the issue of proximate causation. <u>See</u> <u>Froom</u>, 377 N.J. Super. at 318; <u>Finco</u>, 272 N.J. Super. at 490.

As noted by the trial court, the undisputed facts establish that plaintiff would not have been liable in the guaranty action had his attorney in that action not waived the statute of limitations. In that regard, Johnson did not represent plaintiff in the guaranty action. Without any admissible expert opinion or other evidence to the contrary, we find that the inadvertent waiver of the statute of limitations by plaintiff's attorney in the guaranty actions was a superseding cause that severed the chain of causation from Johnson's alleged negligence.

16

See Komlodi v. Picciano, 217 N.J. 387, 418 (2014) ("A superseding or intervening act is one that breaks the chain of causation linking a defendant's wrongful act and an injury or harm suffered by a plaintiff." (internal quotation omitted)). We reject plaintiff's argument that defendants faced the burden of establishing that A-1 would have filed outside of the statute of limitations even if his attorney in the guaranty actions had not inadvertently waived the statute of limitations. It is plaintiff's burden to prove proximate causation beyond mere speculation. See Finco 272 N.J. Super. at 488. In this case, plaintiff only speculates that his waiver of the statute of limitations did not break the chain of causation, failing to address the undisputed fact that he would not have been liable in the guaranty action absent this waiver.

In sum, even when viewing the evidence in the light most favorable to him, plaintiff is unable to establish that the other parties to the Destiny actions would have agreed to extinguish plaintiff's liability on the A-1 guaranty, or that his other attorney's waiver of the statute of limitations did not sever the chain of causation from Johnson's alleged negligence in advising plaintiff regarding the settlement agreement. On the record before us, we find that no reasonable jury could find that plaintiff's alleged damages were proximately caused by Johnson's

17

negligence.  For these reasons, the trial court correctly held that plaintiff is unable to establish proximate causation as a matter of law.

We next address plaintiff's contention that the trial court improperly granted summary judgment prior to the close of discovery.  Although Rule 4:46-1 permits a party to file a motion for summary judgment before the close of discovery, "[g]enerally, summary judgment is inappropriate prior to the completion of discovery."  Wellington v. Estate of Wellington, 359 N.J. Super. 484, 496 (App. Div. 2003) (citing Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 193 (1988)).  A party opposing a motion for summary judgment on the grounds that discovery is incomplete, however, must "demonstrate with some degree of particularity the likelihood that further discovery will supply the missing elements of the cause of action."  Badiali v. New Jersey Mfrs. Ins. Grp., 220 N.J. 544, 555 (2015) (quoting Wellington, 359 N.J. Super. at 496).  The party must identify the specific discovery that is still needed.  See Trinity Church v. Lawson-Bell, 394 N.J. Super. 159, 166 (App. Div. 2007) ("A party opposing summary judgment on the ground that more discovery is needed must specify what further discovery is required, rather than simply asserting a generic contention that discovery is incomplete.").  "[D]iscovery need not be undertaken

or completed if it will patently not change the outcome." Minoia v. Kushner, 365 N.J. Super. 304, 307 (App. Div. 2004) (citations omitted).

In this case, plaintiff fails to specify with sufficient particularity the additional discovery he seeks to conduct and how such discovery would change the outcome of this case. Plaintiff points out that under the trial court's May 19, 2017 order, he had time remaining to conduct additional fact depositions and to submit a supplemental expert report. Plaintiff, however, does not identify any specific individuals he sought to depose or how additional discovery would aid his expert in forming an opinion on proximate causation. See Trinity Church, 394 N.J. Super. at 178 (rejecting argument that summary judgment was premature where briefs in opposition to summary judgment did not specify additional discovery needed on any disputed issue). Based on our review of the record, we find that plaintiff fails to show that additional discovery would establish proximate causation or otherwise change the result of this case. See Badiali, 220 N.J. at 555; Minoia, 365 N.J. Super. at 307. For these reasons, the trial court did not err by granting summary judgment prior to the close of discovery.

Additionally, although this determination does not undermine the trial court's grant of summary judgment, we find that the trial court also had an

19

independent basis to grant summary judgment because plaintiff's complaint was time-barred under California's statute of limitations for attorney malpractice. Defendants argue that New Jersey's choice-of-law rules dictate that California's statute of limitations govern plaintiff's claims, but that plaintiff's claims are time-barred under either California's or New Jersey's statute of limitations.[5] The trial court found that plaintiff timely filed the complaint within New Jersey's six-year statute of limitations for attorney malpractice, but did not address the choice-of-law issue. Having considered this issue, we conclude that California's one-year statute of limitations for attorney malpractice applies and bars plaintiff's claims.

We agree with the trial court that the statute of limitations was triggered on November 13, 2008, when plaintiff received the demand for payment under the factoring agreement by A-1, under both New Jersey and California law. By this date, plaintiff had sufficient knowledge to realize that he suffered damages by the failure to have the A-1 guaranty extinguished by the settlement agreement in the Destiny actions. See Vision Mortg. Corp. v. Patricia J. Chiapperini, Inc.,

---

[5] Although defendants primarily argued that the complaint was time-barred under New Jersey's statute of limitations at oral argument on the summary judgment motion and in their brief in support of summary judgment, they did also briefly in their summary judgment brief argue that California's statute of limitations applied.

A-4067-16T2

156 N.J. 580, 586 (1999) ("[P]ursuant to the discovery rule, a professional malpractice claim accrues when: (1) the claimant suffers an injury or damages; and (2) the claimant knows or should know that its injury is attributable to the professional negligent advice." (quotation omitted and alteration in original)); Cal. Civ. Proc. Code § 340.6(a).[6] Therefore, plaintiff's complaint would be timely under New Jersey's six-year statute of limitations for attorney malpractice, N.J.S.A. 2A:14-1, but would be untimely under California's one-year statute of limitations, Cal. Civ. Proc. Code § 340.6(a). Accordingly, there is a true conflict of law between New Jersey's and California's statutes of limitations in this case. See McCarrell v. Hoffmann-La Roche, Inc., 227 N.J. 569, 584 (2017) ("[W]hen a complaint is timely filed within one state's statute of limitations but is filed outside another state's, then a true conflict is present.").

"[S]ection 142 of the Second Restatement [of Conflicts of Laws] is now the operative choice-of-law rule for resolving statute-of-limitations conflicts."

---

[6] Cal. Civ. Proc. Code § 340.6(a) provides:

> An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first.

Id. at 574. Applying this test, we find that California's statute of limitations applies because New Jersey lacks a substantial interest in plaintiff's claims and California has a more significant relationship to the claims. See MTK Food Servs., Inc. v. Sirius Am. Ins. Co., 455 N.J. Super. 307, 314 (App. Div. 2018) (holding that Pennsylvania's statute of limitations for legal malpractice applied when New Jersey did not have a substantial interest in claims). As in MTK, the primary connection to New Jersey is that defendants are attorneys licensed in New Jersey, whereas all other relevant facts point to California. See id. at 314-15. The underlying litigations, including the Destiny actions, plaintiff's malpractice claim against Winston & Strawn, and the guaranty action, took place in California and involved parties operating in California. Therefore, California's one-year statute of limitations applies to bar plaintiff's claims. See McCarrell, 227 N.J. at 594 (citing Restatement (Second) of Conflicts of Law § 142(2) (Am. Law Inst. 1971)) ("[W]hen New Jersey has no substantial interest in the litigation, under section 142, our courts will not apply our State's statute of limitations to save a claim when another state has a more significant relationship to the case.").

In sum, we conclude that the trial court properly granted summary judgment because plaintiff's expert issued a net opinion with respect to causation

22

and because plaintiff cannot establish proximate causation on the facts of this case as a matter of law. To the extent we have not specifically addressed any of plaintiff's remaining arguments, we find them without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION