**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2660-18T3

ROBERTA GREENING,

     Plaintiff-Appellant,

v.

BARRY E. LEVINE, ESQ.,

     Defendant-Respondent.

_____

Argued telephonically December 18, 2019 –
Decided March 9, 2020

Before Judges Yannotti, Currier, and Firko.

On appeal from the Superior Court of New Jersey, Law
Division, Morris County, Docket No. L-2196-15.

Michael J. Breslin, Jr., argued the cause for appellant.

Mark M. Tallmadge argued the cause for respondent
(Bressler, Amery & Ross, PC, attorneys; Mark M.
Tallmadge and Risa D. Rich, on the brief).

PER CURIAM

In this legal malpractice matter, before this court for a second time, we consider plaintiff's appeal from the grant of summary judgment to defendant. In its ruling, the court found that plaintiff could not demonstrate defendant's conduct was the proximate cause of her damages. We agree and affirm.

I.

We derive the facts from our prior decision, Greening v. Levine, No. A-4441-16 (App. Div. October 16, 2018). In 1998, plaintiff hired defendant to represent her in connection with her purchase of a condominium unit at Windemere Castle (the Castle). He represented her again in 1999 when she refinanced her mortgage, and in 2005 when she purchased a second unit in the building.

In November 2005, a fire destroyed nearly all of the Castle, and the eight unit owners agreed to rebuild. Plaintiff recommended defendant to the condominium association (the Association), comprised of the eight unit owners. There was no written retainer agreement. After soliciting bids, CMR Construction Company (CMR) was selected to rebuild for the sum of $1,369,956.42.[1] A draft contract was

_____

[1] The Association received more than $1.3 million in insurance benefits to reconstruct the Castle. The unit owners knew the insurance proceeds would likely be insufficient to cover the reconstruction costs. Plaintiff stated she expected the shortfall to be in the range of $350,000 to $400,000.

A-2660-18T3

prepared by CMR, forwarded to defendant, and signed by plaintiff, on behalf of the Association, as she served as its President and Treasurer at that time.

The construction was to be completed within nine months. Eighteen months later, the work was not completed. In November 2007, CMR submitted a change order, informing the Association that "governmental changes" called for an additional $413,550 payment. Further bills were sent by CMR to the Association over the next eighteen months. The Association did not sign the supplemental contracts. Finally, CMR submitted its final invoice in April 2009 – the total cost of the project was $1,951,867.42. The Association had paid CMR $1,287,725.70, leaving an outstanding balance of $664,141.72.

At a meeting to discuss the shortfall and how to address it, the unit owners learned that CMR might place a lien on the building for the balance it was owed. Such a lien would affect the owners' ability to sell or finance their units.

Plaintiff contends she asked defendant to challenge CMR's bills. However, the other unit owners disagreed with this tactic. The owners contemplated suing the Association's insurance broker for negligently underinsuring the property, and the unit owner responsible for the fire. As part of their anticipated litigation strategy against the broker, they needed CMR's principal to be their chief witness. As a result, the owners voted to individually assume responsibility for the outstanding

A-2660-18T3

balance, based upon their percentage ownership of the common elements of the building, and pursue the negligence litigation.[2] Plaintiff corroborated that the owners agreed as a group to assume the liability.

In a letter to CMR, defendant confirmed the settlement terms, and outlined the monetary portion assessed to each unit owner. CMR sent plaintiff two promissory notes, totaling approximately $160,000, which she signed and returned to defendant.

However, before defendant returned the promissory notes to CMR, he sent an email to the unit owners expressing his concern that CMR may have violated the New Jersey Consumer Fraud Act (CFA),[3] because in looking at the documents he did not see the Association had signed any of the new invoices CMR had issued for additional charges. Defendant questioned the owners whether they wanted to become "adversarial" with CMR or proceed with the settlement. Plaintiff responded that, "a contractor has an obligation to inform his client in advance when expenses are running significantly higher than originally quoted . . . . [and] if there is some

---

[2] The Association did pursue its claims against its insurance broker and the owners of the unit where the fire originated. It settled the lawsuit for approximately $400,000 – plaintiff's share of the settlement was over $81,000. CMR's principal was retained and testified as the Association's expert witness.

[3] N.J.S.A. 56:8-1 to -211.

A-2660-18T3

legal recourse we have to hold [CMR] accountable for some things . . . I think the Association has an obligation to at least look into it."

Again, the other unit owners disagreed. They did not favor litigation against CMR. In responding to defendant's email, one member stated she wanted to release the Association from its obligation to CMR because she had already lost one buyer for her unit and she did not want to lose another. The owner also stated she did not want to "irritat[e]" CMR's principal.

In September 2009, defendant prepared another settlement agreement, in which CMR released all claims against the Association in exchange for promissory notes from each unit owner, representing their proportionate share of the owed monies. The agreement provided that if a unit owner defaulted on the notes, CMR would not seek legal recourse against the Association or other unit owners.

After plaintiff defaulted on the promissory notes in 2011, she was sued by CMR (the contract case). Plaintiff, in turn, asserted a counterclaim, contending CMR had violated the CFA. At trial, after the close of evidence, CMR moved for a directed verdict both on its affirmative claims and for a dismissal of the counterclaim. The trial judge granted both motions.

In addressing the counterclaim in its oral decision on April 9, 2015, the trial judge found plaintiff was equitably estopped from pursuing a CFA claim because

she had not challenged any of CMR's invoices or taken any action to stop the construction work. To the contrary, while represented by counsel, plaintiff had signed promissory notes to resolve the outstanding balance owed to CMR. Judgment was entered against plaintiff in the amount of $289,483.34.[4] She now seeks to recoup this sum from defendant in the instant action.

## II.

Here, plaintiff alleges defendant was negligent in failing to advise plaintiff not to sign the promissory notes and failing to challenge CMR's final invoice as violative of the CFA. After discovery, defendant moved for summary judgment, contending he did not represent plaintiff in the dispute with CMR, and even if he did, his conduct conformed with the applicable standard of care. Defendant further asserted plaintiff had not demonstrated that his conduct was a proximate cause of any damages she alleged to have sustained.

In granting summary judgment to defendant, the motion judge found there was no lawyer-client relationship between plaintiff and defendant regarding defendant's representation of the Association. The judge stated that defendant did not owe a duty to plaintiff as a non-client.

---

[4] Plaintiff did not appeal from the final judgment.

A-2660-18T3

In our de novo review, we concluded that plaintiff had demonstrated genuine disputed material facts to withstand the grant of summary judgment. Greening, slip op. at 9. We stated,

> Whether or not defendant had a written retainer agreement with [the Association] or plaintiff is irrelevant as the evidence shows that he was acting on behalf of each individual unit owner. There is conflicting evidence as to whether defendant owed a duty to plaintiff creating an issue of fact . . . . Thus, the judge's determination that the parties were not in an attorney-client relationship is erroneous because, at the very least, there was an implied relationship.

> Ibid.

## III.

On remand, defendant renewed his summary judgment motion. He argued that, even if there was an attorney-client relationship, plaintiff had not established proximate cause between his conduct and her alleged damages.

Specifically, defendant asserted that even if plaintiff had been advised that she could recover treble damages and counsel fees under the CFA, she could not demonstrate that a majority of the unit owners would have chosen not to sign the promissory notes, or pursue and prevail on a CFA claim. In addition, even if the unit owners did not sign the promissory notes, CMR could have pursued a lawsuit against plaintiff and the other owners under a quantum meruit theory. Because there

7

were no complaints as to the quality or necessity of CMR's work, CMR would likely have prevailed, and plaintiff would have been responsible for her individual share of any award.

The judge granted the summary judgment motion in an order and written statement of reasons on January 11, 2019. In reaching her decision, the judge found there was no genuine dispute of material fact as to the issue of proximate cause. The judge explained that plaintiff

> failed to provide any competent evidence . . . suggest[ing] that absent [d]efendant's conduct, the majority of [the Association's] members would [not] have signed the promissory note[s] and would have chosen to challenge CMR's final invoice and CMR's conduct during the three-year period of construction. In fact, the competent evidence suggests that even absent [d]efendant's alleged malpractice, the majority of [the Association's] members would have still chosen to enter into an agreement with CMR and sign the promissory notes.

Furthermore, the judge noted that plaintiff did not "establish that she would have prevailed in pursuing a CFA claim individually." This finding was predicated on the lack of evidence in the contract case trial, where plaintiff had not presented "a report by a construction expert to challenge the quality of the work performed by CMR or the value of that work."

## IV.

On appeal, we review a grant of summary judgment de novo, observing the same standard as the trial court. Townsend v. Pierre, 221 N.J. 36, 59 (2015) (citing Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 405 (2014)). Summary judgment should be granted only if the record demonstrates "there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c).

In determining whether a summary judgment motion was properly granted, we review the evidence, "draw[ing] all legitimate inferences from the facts in favor of the non-moving party." Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016) (citing R. 4:46-2(c)); see also Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995).

If no genuine issue of material fact exists, the inquiry then turns to whether "the trial court correctly interpreted the law." DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (citation omitted). Our review of issues of law is de novo; we accord no deference to the trial judge's legal conclusions. Nicholas v. Mynster, 213 N.J. 463, 478 (2013) (citing Murray v. Plainfield Rescue Squad, 210 N.J. 581, 584 (2012)).

A-2660-18T3

To establish an attorney's negligence in his or her representation of a client, a plaintiff must demonstrate: "(1) the existence of an attorney-client relationship creating a duty of care upon the attorney; (2) the breach of that duty; and (3) proximate causation." Conklin v. Hannoch Weisman, 145 N.J. 395, 416 (1996) (citation omitted). The plaintiff has "the burden of proving by a preponderance of competent credible evidence that injuries were suffered as a proximate consequence of the attorney's breach of duty." Sommers v. McKinney, 287 N.J. Super. 1, 10 (App. Div. 1996) (citing Lieberman v. Emp'rs Ins. of Wausau, 84 N.J. 325, 342 (1980)). "This burden is not satisfied by mere conjecture, surmise or suspicion." Ibid. (citing 2175 Lemoine Ave. Corp. v. Finco, Inc., 272 N.J. Super. 478, 488 (App. Div. 1994)).

Plaintiff contends the judge erred in concluding there were no issues of fact as to proximate cause. She asserts the trial judge in the contract case found there were violations of the CFA, but plaintiff had waived her right to pursue a CFA claim when she signed the release in favor of CMR. She relies on the opinion of her expert presented in the contract trial. The expert opined that if plaintiff was estopped or found to have waived her rights regarding a CFA claim, it was because defendant failed to inform and educate her of those rights.

Plaintiff misconstrues the trial judge's ruling in the contract case. In his cogent decision, the trial judge stated that because CMR had not given timely notice that the work was going to take longer than the time set in the contract, that was "a question . . . that could go to a jury. . . ." But the judge continued the sentence, saying "but for rulings I'm going to make in a few minutes . . . ." He then proceeded to give his explanation as to why the CFA claim lacked merit.

The judge discussed the numerous instances when the Association and the unit owners, including plaintiff, could have told CMR to stop its work or advise CMR they would not pay the supplemental invoices. Instead, to serve the owners' purposes, and to procure CMR's assistance in a future litigation, plaintiff and the other owners each released CMR from any claims against the Association in exchange for the individuals taking on the obligation. The judge dismissed the counterclaim in the contract case, finding plaintiff was equitably estopped from pursuing the action.

It is clear, from the evidence presented during the contract case trial, that even if defendant failed to properly advise plaintiff as to her rights under the CFA, she cannot show she sustained any damages proximately caused by defendant's conduct. When plaintiff was informed by defendant of the possibility of a CFA violation, she thought the Association should "look into it." The other unit owners disagreed. For

11

their own personal reasons, the unit owners wanted to resolve the CMR bill; they did not want a lien on the Association. Furthermore, the owners needed CMR's cooperation and its principal's testimony to support a future separate litigation.

In light of those facts, plaintiff cannot establish the Association would have mounted a successful challenge to CMR's final invoice. To the contrary, the unit owners declined to pursue litigation and instead procured a release from CMR, giving up its right to recovery against the Association in exchange for the owners taking on the liability individually. The owners further requested and received an agreement from CMR that if one of them defaulted on the promissory notes, only that promisor would be liable.

We are satisfied that plaintiff has not demonstrated defendant's alleged negligence was a substantial factor in any monetary loss. See Froom v. Perel, 377 N.J. Super. 298, 313 (App. Div. 2005). The grant of summary judgment was supported by competent credible evidence.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2660-18T3