**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2202-19

RITABEN B. PATEL and
BHARATKUMAR T. PATEL,

    Plaintiffs-Appellants,

v.

ERIC S. PENNINGTON, ESQ.,

    Defendant-Respondent.

_____

> Submitted February 1, 2021 – Decided February 26, 2021
>
> Before Judges Hoffman and Smith.
>
> On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-2283-19.
>
> Weisberg Law, attorneys for appellants (Matthew B. Weisberg, on the brief).
>
> Wilson, Elser, Moskowitz, LLP, attorneys for respondent (Maxwell L. Billek, of counsel; Michael P. Chipko, of counsel and on the brief).

PER CURIAM

Plaintiffs Ritaben B. Patel (Rita) and Bharatkumar T. Patel appeal from a January 10, 2020 Law Division order that granted the summary judgment dismissal of their legal malpractice claim against defendant Eric S. Pennington. We affirm.

I.

We discern the following facts from the summary judgment record. In June 2012, Golden Plate, LLC (Golden Plate), of which Bharatkumar[1] was a member, leased retail space in Edison owned by Beechwood Shopping Center, LLC (Beechwood). In connection with the lease, plaintiffs executed a guarantee imposing joint and several liability on Golden Plate and plaintiffs for breach of the lease. Golden Plate opened a frozen yogurt shop, Yo Café Club, in the leased space, but the business proved unsuccessful. Eventually, Golden Plate fell behind on its rental payments and vacated the premises prematurely, in violation of the lease. Consequently, Beechwood filed suit against Golden Plate and plaintiffs for breach of contract and related damages in February 2014.[2]

---

[1]  Intending no disrespect, we refer to plaintiffs, Rita Patel and Bharatkumar Patel, as well as Vikesh Patel and Jayesh Patel, by their first names for ease of reference.

[2]  Docket No. MID-L-1147-14.

A-2202-19

Plaintiffs retained defendant in May 2014 to defend against Beechwood's suit. On behalf of Bharatkumar, defendant also filed a complaint against Vikesh Patel and Jayesh Patel in July 2014, the other members of Golden Plate and plaintiffs' business partners, alleging Golden Plate's operating agreement expressly required Vikesh and Jayesh to use money invested by Bharatkumar to acquire a 7-Eleven franchise and entitled Bharatkumar to a return of his investment, plus interest, if they failed to acquire the franchise.[3] The complaint listed counts of breach of contract, unjust enrichment, conversion, and bad faith against Vikesh and Jayesh based on their failure to acquire a 7-Eleven franchise, misuse of Bharatkumar's investment, and failure to return the investment. The January 15, 2013 operating agreement was attached to the complaint as Exhibit A.

Plaintiffs' answer to Beechwood's complaint, filed by defendant in August 2014, likewise included a third-party complaint against Vikesh. The third-party complaint alleged indemnification, breach of contract, and breach of implied contract on the basis that Vikesh promised and failed to make rental payments owed to Beechwood for the retail space leased by Golden Plate. In March 2015,

---

[3] Docket No. MID-L-4218-14. Bharatkumar also joined 7-Eleven, Inc. and Golden Plate as defendants in his complaint, but the claims against these defendants were dismissed before trial.

A-2202-19

the trial court consolidated Bharatkumar's suit against Vikesh and Jayesh with Beechwood's suit against plaintiffs.

Vikesh and Jayesh claimed plaintiffs fabricated the allegations against them to improperly shift liability for the breached lease agreement to Vikesh and Jayesh. According to Vikesh and Jayesh, the parties never sought to pursue a 7-Eleven franchise, but rather agreed to open the Yo Café Club store that ultimately failed. During discovery, Vikesh and plaintiffs both produced evidence establishing the parties' cooperation in opening and operating Yo Café Club. On November 24, 2015, counsel for Vikesh served defendant, as counsel for Bharatkumar and Rita, a frivolous litigation letter, pursuant to R. 1:4-8(b)(1), demanding they dismiss their pleadings against Vikesh within twenty-eight days, emphasizing the lack of evidentiary support for their allegations.

By January 2016, Vikesh had produced significant evidence indicating plaintiffs' January 15 operating agreement was forged. From the attorney who drafted it, John Wiley, Vikesh obtained Golden Plate's real operating agreement, dated January 11, 2013, which made no mention of a 7-Eleven franchise and did not contain the provisions favorable to Bharatkumar. Wiley further certified that his office did not draft the January 15 agreement offered by plaintiffs. Vikesh also later produced an expert report from a forensic document examiner

A-2202-19

who opined plaintiffs' January 15 operating agreement was altered and fraudulent. On January 5, 2016, Vikesh served defendant a second frivolous litigation letter, which highlighted the evidence obtained from Wiley. Another letter dated January 12, 2016 included Wiley's certification.

On February 10, 2016, defendant filed a motion to be relieved as counsel for plaintiffs, pursuant to R. 1:11-2(a), citing an irreconcilable deterioration of the attorney-client relationship based on plaintiffs' expressed dissatisfaction with, and lack of trust in, defendant's representation. The trial court granted defendant's motion on March 4, 2016, about nine weeks before the trial date set for May 9, 2016.

At that point, plaintiffs retained Harrison Byck as their new attorney. On March 15, 2016, Vikesh's counsel sent Byck a frivolous litigation letter, copies of the previous frivolous litigation letters, and a copy of the expert report concluding plaintiffs' January 15 operating agreement was forged. Vikesh sent two more frivolous litigation notices to Byck on April 14 and May 31, 2016.

Following oral argument on May 6, 2016, the trial court granted summary judgment in favor of Beechwood with respect to their claim against Rita and dismissed plaintiffs' third-party claim against Vikesh. The following issues remained for trial: (1) Bharatkumar's personal liability for Golden Plate's breach

5

of the lease agreement with Beechwood,[4] (2) the amount of damages plaintiffs owed for the breached lease, and (3) Bharatkumar's claims against Vikesh and Jayesh based on the disputed Golden Plate operating agreements. Trial on these issues was delayed for nearly two years, to April 30, 2018, primarily due to plaintiffs filing for bankruptcy three times.

After presiding over a bench trial, on May 8, 2018, Judge Melvin L. Gelade dismissed plaintiffs' claims against Vikesh and Jayesh on the merits. In an oral decision, Judge Gelade found plaintiffs' factual allegations were "completely false and fraudulent" and that "[e]very material document presented in this case [was] a fraud[,]" including the January 15 operating agreement offered by plaintiffs. Specifically, Judge Gelade determined plaintiffs' operating agreement was altered to omit Bharatkumar as a capital contributor to Golden Plate and to require Vikesh to make ninety percent of the capital contributions to Golden Plate. The judge further found that the actual operating agreement required Bharatkumar to make eighty percent of the capital contributions to Golden Plate, with Vikesh and Jayesh only responsible for ten percent each.

---

[4] The court granted summary judgment in favor of Beechwood against Rita because she admitted to signing the lease guarantee. The court did not grant summary judgment as to Bharatkumar because he maintained his signature on the lease agreement was forged.

Additionally, Judge Gelade found plaintiffs fraudulently inserted multiple paragraphs into their operating agreement which were completely absent from the real operating agreement. These bogus paragraphs provided that the members of Golden Plate agreed "to buy 7-11 franchises and businesses in New Jersey[,]" Bharatkumar contributed at least $275,000 to Golden Plate for that purpose, Bharatkumar's contribution was to be held in a separate account and only used in pursuit of the 7-Eleven franchise(s), Bharatkumar retained the right to terminate the agreement and demand from Vikesh and Jayesh a return of his investment plus fourteen percent interest if Golden Plate failed to purchase a franchise by January 15, 2014, and Vikesh and Jayesh "jointly and severally personally guarantee[d] the performance of [the] agreement."

Judge Gelade further found the members of Golden Plate all agreed to open Yo Café Club, with Bharatkumar investing $319,000 into the venture. Golden Plate used Bharatkumar's investment to "construct and outfit the frozen yogurt shop[,]" though ultimately Yo Café Club failed. The judge specifically rejected plaintiffs' claim that Vikesh and Jayesh misappropriated some or all of Bharatkumar's investment for their own personal use, finding Vikesh credibly testified "with documents to support it" that Golden Plate devoted "about $200,000 plus" towards opening Yo Café Club. The judge concluded there was

7

"utterly no basis in fact or law to this complaint" and dismissed all of Bharatkumar's claims with prejudice.

On May 14, 2018, Judge Gelade entered an order for judgment requiring plaintiffs pay Beechwood $150,952.35, plus costs and post-judgment interest. The order also stated that Beechwood "is entitled to legal fees and disbursements," pursuant to the guarantee executed by plaintiffs, upon filing of a separate motion. On May 23, 2018, Beechwood filed that motion, and Vikesh also filed a motion for fees based on frivolous litigation. Judge Gelade granted these motions, awarding Beechwood an additional $46,698.00 and Vikesh $96,770.33. Plaintiffs filed a notice of appeal, but we ultimately dismissed the appeal on January 2, 2019 for failure "to prosecute the appeal and provide the complete transcript record."

On March 20, 2019, plaintiffs filed the legal malpractice action under review against defendant. Plaintiffs alleged that defendant's failure to subpoena the financial records of Vikesh and Jayesh during discovery and defendant's failure to provide Byck with his entire file, left plaintiffs unable to mount a defense against Beechwood's claims and unable to prove their case against Vikesh and Jayesh.

On October 11, 2019, defendant moved for summary judgment, which Judge Thomas D. McCloskey granted following oral argument. In a comprehensive oral decision, Judge McCloskey explained no rational factfinder could conclude defendant proximately caused plaintiffs' alleged damages. Since proximate cause constitutes a necessary element for establishing legal malpractice, the judge held that plaintiffs' claim failed as a matter of law, entitling defendant to the dismissal of plaintiffs' claims.

This appeal followed, with plaintiffs presenting the following points of argument for our review:

> 1. The Trial Judge Committed Reversible Error When He Concluded Plaintiffs Are Collaterally Estopped From Pursuing Their Legal Malpractice Claim Against Defendant Pennington.
>
> 2. The Trial Judge Committed Reversible Error When He Concluded Plaintiffs Cannot Prove Defendant Pennington's Negligence Proximately Caused Their Loss.
>
> 3. To the Extent the Trial Judge's Grant of Summary Judgment in Favor of Defendant Pennington was Based on the Doctrine of Unclean Hands, it Constitutes Reversible Error.

## II.

Review of a ruling on summary judgment is de novo, and we apply the same legal standard as the trial court. Nicholas v. Mynster, 213 N.J. 463, 477-

78 (2013). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c).

When determining whether there is a genuine issue of material fact, we must consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co of Am., 142 N.J. 520, 540 (1995). "In applying that standard, a court properly grants summary judgment 'when the evidence is so one-sided that one party must prevail as a matter of law.'" Davis v. Brickman Landscaping, 219 N.J. 395, 406 (2014) (quoting Brill, 142 N.J. at 540). We afford no deference to the trial court's legal conclusions. Nicholas, 213 N.J. at 478.

"Legal-malpractice suits are grounded in the tort of negligence." McGrogan v. Till, 167 N.J. 414, 425 (2001). "[A] legal malpractice action has three essential elements: '(1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney, (2) the breach of that duty by

the defendant, and (3) proximate causation of the damages claimed by the plaintiff.'" Jerista v. Murray, 185 N.J. 175, 190-91 (2005) (quoting McGrogan, 167 N.J. at 425). The plaintiff bears the burden of proving all three elements. Davis, 219 N.J. at 406.

In finding plaintiffs could not prevail on their legal malpractice claim as a matter of law, Judge McCloskey declined to consider whether defendant breached his duty of care towards plaintiffs, and instead rested his decision on the grounds that "proximately caused damages here could never be found." He explained, "no damage allegedly suffered by the plaintiffs could have been the result of anything done by [defendant], because the claims below, in the Beechwood and 7-Eleven matters[,] were found by Judge Gelade to be entirely fraudulent, and based upon a false operating agreement that they created." Invoking the doctrine of collateral estoppel, Judge McCloskey found Judge Gelade's prior findings barred plaintiffs from arguing they had viable, non-fraudulent claims against Vikesh and Jayesh, which would have been successful but for defendant's malpractice. Rather, "There[ was] nothing that defendant . . . could have done to turn the plaintiff's fraud into a viable claim." Additionally, Judge McCloskey concluded defendant's alleged malpractice did not proximately cause the attorneys fees imposed on plaintiffs, as they "were

given countless opportunities to cease the litigation well after [defendant] was relieved from the case," yet proceeded anyway with their fraudulent claims against Vikesh and Jayesh.

On appeal, plaintiffs argue that Judge McCloskey erred in concluding defendant did not proximately cause plaintiffs' damages. They assert that defendant's failure to subpoena the financial records of Vikesh and Jayesh caused the court to conclude their misappropriation claims were fraudulent and meritless. Had defendant subpoenaed the bank records during discovery, plaintiffs argue "Bharatkumar could have succeeded" on his unjust enrichment, conversion, and bad faith claims by showing Vikesh and Jayesh misappropriated $119,000 of the invested $319,000. In turn, they argue plaintiffs would not have been forced to pay attorney's fees because their successful suit would not have been deemed frivolous. Furthermore, plaintiffs argue they are not collaterally estopped from arguing they could have recovered $119,000 via Bharatkumar's misappropriation claim because Judge Gelade stated Vikesh accounted for only $200,000, not the total $319,000 Bharatkumar invested in Golden Plate. These arguments lack merit.

To establish proximate causation and damages in a legal malpractice action, a plaintiff must first establish causation in fact, which "requires proof

that the result complained of probably would not have occurred 'but for' the negligent conduct of the defendant." Conklin v. Hannoch Weisman, 145 N.J. 395, 417 (1996) (quoting Vuocolo v. Diamond Shamrock Chems. Co., 240 N.J. Super. 289, 295 (App. Div. 1990)). Additionally, a plaintiff "must present evidence to support a finding that defendant's negligent conduct was a 'substantial factor' in bringing about plaintiff's injury, even though there may be other concurrent causes of the harm." Froom v. Perel, 377 N.J. Super. 298, 313 (App. Div. 2005) (quoting Conklin, 145 N.J. at 419). Finally, the plaintiff must "show what injuries were suffered as a proximate consequence of the attorney's breach of duty," ordinarily measured by "the amount that a client would have received but for the attorney's negligence." 2175 Lemoine Ave. Corp. v. Finco, Inc., 272 N.J. Super. 478, 488 (App. Div. 1994).

The burden is on the plaintiff to establish proximate causation and damages "by a preponderance of the competent, credible evidence and is not satisfied by mere 'conjecture, surmise or suspicion.'" Finco, 272 N.J. Super. at 488 (quoting Long v. Landy, 35 N.J. 44, 54 (1961)). Although issues of proximate causation are typically for the jury to resolve, "a court may decide the issue as a matter of law where 'no reasonable jury could find that the plaintiff's injuries were proximately caused' [by the defendant's conduct.]" Broach-Butts

13

v. Therapeutic Alts., Inc., 456 N.J. Super. 25, 40 (App. Div. 2018) (quoting Vega by Muniz v. Piedilato, 154 N.J. 496, 509 (1998)).

In legal malpractice cases, proximate causation must ordinarily be established by expert testimony that addresses the particular facts of the case. Vort v. Hollander, 257 N.J. Super. 56, 61 (App. Div. 1992); see also Froom, 377 N.J. Super. at 318; Finco, 272 N.J. Super. at 490. However, expert testimony may not be required to establish proximate cause where the causal relationship between the attorney's malpractice and the client's loss is so obvious that the trier of fact can resolve the issue as a matter of common knowledge. Sommers v. McKinney, 287 N.J. Super. 1, 11 (App. Div. 1996).

The most common way to establish the measure of damages is by proceeding by way of a "suit-within-a-suit," that is, by presenting to the jury the proofs that would have been presented had no malpractice occurred. Garcia v. Kozlov, Seaton, Romanini & Brooks, P.C., 179 N.J. 343, 358 (2004). Other methods available for calculating damages include reasonable modifications of the suit-within-a-suit strategy and expert testimony. Ibid.

In this case, we agree with Judge McCloskey that plaintiffs cannot establish proximate cause as a matter of law because the record here is devoid of evidence suggesting Bharatkumar's misappropriation claims against Vikesh

and Jayesh would have been successful but for any negligent conduct on the part of defendant. A review of the record reveals defendant's actions or inactions were not a substantial factor in bringing about plaintiffs' financial loss.

Expert testimony is necessary in this case to prove proximate causation and damages. This is not a case in which proximate cause could be determined by the trier of fact as a matter of common knowledge. Rather, only an expert could show that defendant could have successfully obtained and introduced Vikesh's and Jayesh's bank records, and that this evidence would have entitled Bharatkumar to prevail on at least one of his claims against Vikesh and Jayesh. An expert's testimony on proximate cause is particularly vital in this case considering that Judge Gelade deemed plaintiffs' allegation of misappropriation completely fraudulent. Plaintiffs, however, failed to produce the opinion or testimony of a legal malpractice expert prepared to guide the trier of fact through the necessary proximate causation analysis.

Plaintiffs did submit an affidavit of merit from an expert-attorney, as required by N.J.S.A. 2A:53A-27; however, the statement of this expert was entirely conclusory. The expert swore:

> Based upon my review and analysis of the facts and circumstances surrounding the representation of Plaintiffs by Defendant Pennington I have concluded to a reasonable degree of legal certainty that Defendant

Pennington committed legal malpractice in that he deviated from the customary standards and practices of New Jersey lawyers and failed to exercise the skill, knowledge, ability and judgment required of him under the circumstances.

[] I have further concluded to a reasonable degree of legal certainty and that Defendants' legal malpractice proximately caused damages suffered by Plaintiffs, which Plaintiff seeks in this action.

Without reference to the evidence, methodology, or even the facts of the case that enabled the expert to reach these conclusions, the affidavit of merit amounts to a net opinion with no evidential weight. See Townsend v. Pierre, 221 N.J. 36, 55 (2015) ("The net opinion rule . . . mandates that experts be able to identify the factual bases for their conclusions, explain their methodology, and demonstrate that both the factual bases and the methodology are reliable. An expert's conclusion is excluded if it is based merely on unfounded speculation and unquantified possibilities.") (citations and internal quotation marks omitted); see also Kaplan v. Skoloff & Wolfe, P.C., 339 N.J. Super. 97, 103-04, (App. Div. 2001) (holding that trial court properly excluded an expert report in a legal malpractice action where the expert failed to reference any evidential support of duty of care). Beyond the net opinion contained in the affidavit of

16

merit, plaintiffs provided no expert evidence or opinion on proximate causation and damages supported by reliable evidence and methodology.

Moreover, no other evidence in the record, even when viewed in the light most favorable to plaintiffs, would permit a rational trier of fact to find defendant proximately caused plaintiffs' claimed damages. Plaintiffs indicate that Byck subpoenaed PNC Bank and Unity Bank for the records of Vikesh and Jayesh on December 19, 2019, yet the results of those subpoenas are not contained in the record. Additionally, a copy of the January 11, 2013 Golden Plate operating agreement, which Judge Gelade determined was the actual operating agreement, is conspicuously absent from the record. Without this evidence establishing a business or fiduciary relationship between plaintiffs and Vikesh and Jayesh, a trier of fact could not reasonably conclude that Bharatkumar had a valid basis for asserting a misappropriation claim. Because plaintiffs failed to offer expert testimony or any other competent, credible evidence establishing proximate cause, we agree with Judge McCloskey that plaintiffs' claim for legal malpractice must fail as a matter of law.

Though we need not apply collateral estoppel to reach our conclusion, we acknowledge that Judge McCloskey did not err in applying the equitable doctrine. After hearing plaintiffs' argument and considering plaintiffs' evidence

17

at the bench trial, Judge Gelade rejected Bharatkumar's misappropriation claim on its merits, finding Vikesh accounted for the invested money and plaintiffs' assertions were fraudulent and incredible. Plaintiffs therefore cannot claim whether Vikesh and Jayesh mishandled Bharatkumar's money is a factual issue that remains in dispute and could have been resolved in plaintiffs' favor had defendant subpoenaed the bank records. See Pivnick v. Beck, 326 N.J. Super. 474, 485-487 (App. Div. 1999) (applying collateral estoppel to preclude a plaintiff's legal malpractice action). Since Judge Gelade's prior findings preclude plaintiffs from alleging their misappropriation action against Vikesh and Jayesh would have succeeded but for defendant's failure to serve the subpoenas, plaintiffs cannot prove causation in fact, a necessary component to establishing proximate cause.

We also note here that the evidence in the record likewise does not establish defendant breached the duty of care he owed plaintiffs as their attorney. As with proximate cause, expert testimony is generally required to set forth a lawyer's duties to his or her client and explain how and when those duties are breached, as the average juror is unfamiliar with the professional standards of legal practice. Buchanan v. Leonard, 428 N.J. Super. 277, 288 (App. Div. 2013). Plaintiffs' failure to present sufficient expert evidence establishing defendant's

duty and breach likewise entitles defendant to judgment dismissing plaintiff's legal malpractice claim as a matter of law.

Plaintiffs remaining arguments lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION