**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2334-24

CHRISTOPHER GONZALEZ,

    Plaintiff-Appellant,

v.

NICOLE DIBELLO and
MCELROY, DEUTSCH,
MULVANEY &
CARPENTER, LLP,

    Defendants-Respondents.

_____

          Argued March 26, 2026 – Decided April 15, 2026

          Before Judges Mawla and Bishop-Thompson.

          On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-3518-22.

          Jamie N. Burke (Manning & Kass, Ellrod, Ramirez, Trester, LLP) argued the cause for appellant (Jamie N. Burke and Nathalie C. Hackett (Manning & Kass, Ellrod, Ramirez, Trester, LLP), attorneys; Jamie N. Burke and Nathalie C. Hackett, on the briefs).

John L. Slimm argued the cause for respondents (Marshall Dennehey, PC, attorneys; John L. Slimm and Jeremy J. Zacharias, on the brief).

PER CURIAM

In this legal malpractice case, plaintiff Christopher Gonzalez appeals from two July 19, 2024 orders, which denied his motion to extend discovery and granted in part defendants Nicole DiBello, Esq. and McElroy, Deutsch, Mulvaney & Carpenter, LLP's motion precluding Gonzalez's liability expert from testifying at trial. Gonzalez also appeals from a September 23, 2024 order denying his motion for summary judgment and a February 20, 2025 order granting defendants summary judgment. We affirm.

Gonzalez served as a representative buyer for investors who sought to purchase an auto dealership. DiBello and her law firm were retained to provide document preparation and review services for the transaction.

On August 3, 2020, a federal complaint was filed against Gonzalez, DiBello, Alex Korchmar, Sam Asman, Steven LaBonte, Esq., Edward Bussinger, Denville Partners, LLC, and Joseph S. Aboyoun, Esq. by an individual investor, Elliot Zemel, and Zemel's company, Koze Investments, LLC. The complaint alleged Korchmar devised a scheme to defraud Zemel with the assistance of the other defendants in connection with the transaction.

Korchmar allegedly approached Zemel and represented he was in the process of acquiring the dealership. Korchmar was acting through representative buyers, initially Asman, and later, Gonzalez. The representative buyers and Korchmar were originally represented by LaBonte, who negotiated and dealt with Zemel's counsel. The seller was Bussinger and his company, Denville Partners, LLC. They were represented by Aboyoun.

Around June 2019, LaBonte represented to Zemel's counsel the seller executed the sales contract, which was held in escrow by Aboyoun pending the wiring of the deposit into escrow. Zemel negotiated with Korchmar's counsel and the representative buyers, who agreed to assign the property from Asman to an entity to be formed by Zemel. Korchmar claimed the deal would be lost if the deposit was not wired, so Zemel wired the money.

The federal complaint asserted LaBonte told Aboyoun that Zemel was the source of the funds, the real buyer, and the assignee. LaBonte and Korchmar represented to Zemel the assignment was forthcoming. At Aboyoun's insistence, DiBello then replaced LaBonte as counsel. DiBello and Aboyoun previously worked together at the same law firm. LaBonte informed DiBello that Zemel was the source of the escrow money and the plan was to convey the property to an entity formed by Zemel.

3

Zemel alleged he never received an executed contract from the seller or the assignment from the representative buyers. On September 3, 2019, without Zemel's knowledge, Korchmar, Asman, and Gonzalez, acting through DiBello, and the seller, acting through Aboyoun, executed an amendment to the sales agreement, which made the escrow deposit non-refundable. The complaint alleged Aboyoun released the deposit to the seller without Zemel's approval, who then split the money with the other defendants.

The federal complaint alleged: fraud, breach of contract, and breach of fiduciary duty against Gonzalez; aiding and abetting the breach of fiduciary duty against DiBello; and conspiracy to commit fraud and aiding and abetting fraud against Gonzalez and DiBello. The alleged damages consisted of the loss of the security deposit.

Gonzalez moved for summary judgment in the federal case. His motion was denied because a stipulation dismissing him from the case had been entered. The federal matter, including all claims and cross-claims, were ultimately dismissed by stipulation on January 16, 2024. Neither Gonzalez nor DiBello were ever found liable.

In the federal matter, discovery showed Zemel never retained DiBello and DiBello never gave him legal advice. Zemel told LaBonte he was the source of

4

the wired escrow funds, but Zemel was unaware of any communication with DiBello indicating he was the source of the funds. Neither Zemel nor his attorney, Neil Fink, Esq., ever spoke with DiBello about the transaction. The deposit was wired to Aboyoun, not DiBello.

Discovery revealed DiBello was not involved in Gonzalez becoming the representative buyer. DiBello prepared documentation to reflect a transfer of interest from Asman to Gonzalez. Gonzalez became DiBello's client after the transfer occurred and Gonzalez signed a retainer agreement. He did not want DiBello to undo the agreements he had signed without advice of counsel.

In his summary judgment motion in the federal case, Gonzalez represented he signed the amendment to the sales agreement, which made the escrow deposit non-refundable, after it was forwarded to him by Korchmar. Gonzalez was not involved with the negotiation for the amendment and was not represented by DiBello during the negotiation. His statement of undisputed material facts pointed out DiBello wrote to Aboyoun that the amendment "ha[d] not yet been fully reviewed by [her] client or . . . Gonzalez," which evidenced Gonzalez was not her client. Gonzalez certified he never provided any funds for the transaction. His only involvement was signing the amendment to the agreement, "which was previously negotiated without his participation or representation of

5

his interests by legal counsel." Gonzalez was unaware of Zemel's involvement, or the involvement of any other investors in the transaction, believing Korchmar used his own money to fund the transaction.

Gonzalez confirmed he retained DiBello to represent him only after he signed the amendment to the agreement on September 3, 2019. He signed and returned DiBello's retainer agreement the following day. On September 13, 2019, Gonzalez filed an application as a proposed buyer with the auto manufacturer. On October 9, 2019, the manufacturer rejected Gonzalez's application, and another representative buyer replaced him in November.

On October 20, 2022, Gonzalez sued defendants in this case. He alleged legal malpractice and a breach of fiduciary duty regarding the transaction, which gave rise to the federal litigation. His damages were the legal fees he incurred to defend the federal litigation, which he claimed were at least $300,000.

On May 24, 2024, the motion judge granted an extension of discovery until June 28, 2024, to allow the parties to complete expert discovery, and set the trial date for September 23, 2024. The judge found good cause to extend discovery pursuant to Rule 4:24-1(c) and noted the case would have had 570 days of discovery by June 28, 2024. Further requests to extend discovery would require a motion and

be governed by the "exceptional circumstances" standard since an [a]rbitration/[t]rial [d]ate has been fixed by this [c]ourt. The holding in Hollywood Café Diner, Inc. v. Jaffee, 473 N.J. Super. 210 (App. Div. 2022), is not applicable . . . because an [a]rbitration/[t]rial [d]ate is being fixed by this [c]ourt after the parties received the benefit of previously granted days of discovery and multiple discovery extensions. The [c]ourt has not set the arbitration/trial date in the early stages of litigation, or by way of automated notice to potentially cause any confusion to the parties. The dates set forth herein and the scheduling of [a]rbitration/[t]rial is so that the [c]ourt may appropriately manage discovery, set forth the terms and conditions of the within extension [o]rder, and provide a realistic arbitration and trial date pursuant to the spirit of the 2000 Rule Amendments.

[(Citations reformatted).]

Gonzalez initially retained a liability expert who created a report on July 24, 2023. However, that expert was disqualified due to a conflict of interest. On June 25, 2024, Gonzalez filed two expert reports dated September 21, 2023, and June 18, 2024, prepared by a second expert. The same day, defendants moved to preclude the original expert from testifying and the second expert from relying on any part of the first expert's report or opinions. Gonzalez opposed defendants' motion and, pursuant to Rule 4:24-1(c), moved to extend discovery until July 29, 2024.

The motion judge entered two orders on July 19, 2024. The first order denied Gonzalez's cross-motion to extend discovery, because there were no exceptional circumstances. The second order granted in part defendants' motion and precluded: Gonzalez's first expert from testifying at trial; Gonzalez's attorneys from referring to the first expert's report or opinions in the questioning of lay or expert witnesses; any reference to the first expert's opinion in the second expert's report; and the second expert from opining at trial by referring to the opinions of the first expert. The order added that any facts in the first expert's report could be utilized. If the parties disagreed on what was fact versus opinion in the first expert's report, the trial judge would resolve the dispute "by decision or a Rule 104 [hearing]."

Defendants moved for summary judgment. They argued Gonzalez signed the amendment prior to retaining DiBello and admitted he did not have legal advice from an attorney prior to signing the amendment. Defendants asserted Gonzalez's second expert offered speculative, inadmissible net opinions and the breach of fiduciary duty claim should be dismissed because it was duplicative of the malpractice claim. Gonzalez alleged he was entitled to summary judgment because defendants breached various duties under the Rules of

Professional Conduct (RPC), specifically RPCs 1.1, 1.3, 1.4, 1.6, and 1.7, causing him to suffer damages.

Following oral argument, the motion judge made oral rulings on the summary judgment motions. He denied Gonzalez's motion, finding the RPCs "are not designed to establish standards of civil liability but, rather, to provide standards of professional conduct by which lawyers may be disciplined."

The judge observed Gonzalez's second expert opined DiBello had a duty to investigate the facts and determine whether Gonzalez was financially capable of buying the property. If she had done so, she would have learned it was Korchmar financing the purchase and, therefore, could have protected Gonzalez from the federal lawsuit. An investigation would have also revealed Gonzalez was disqualified from the transaction due to his association with Korchmar.

The judge found he could not discern the source of the second expert's opinions. They were net opinions either because the expert did not explain the bases of his conclusions or had improperly adopted the first expert's opinion.

The judge also found the expert's opinion DiBello had a duty to investigate and determine the source of the funds for the transaction contradicted Meisels v. Fox Rothschild LLP, 240 N.J. 286 (2020). He explained, quoting Meisels, 240 N.J. at 302, there is no "duty on lawyers involved in their client's real estate

transaction to inquire into the origins and possible third-party interests of every source of funds that flow[] into a trust account for the purposes of closing on a transaction." Nor does an attorney have "to determine whether the client was financially capable of consummating the transaction." The case was not about the source of the funds, but instead what did DiBello "know[ or] not know, what . . . did she ask [Gonzalez,] and what did he say or not [about] any involvement of" Korchmar.

The motion judge struck portions of the second expert's opinions related to his ruling and barred him from testifying there was a duty to investigate the source of the funds in the transaction. He denied the remainder of defendants' motion for summary judgment because disputed material facts remained, including whether defendants were aware of Korchmar's involvement in the transaction. He concluded a Rule 104 hearing was needed to parse the second expert's opinions from the first but encouraged the parties to see whether they could resolve the issue without a hearing.

On September 23, 2024, the motion judge entered an order reflecting his oral decision. The order denied both parties' motions for summary judgment for the reasons stated on the record. It also stated a "Rule 104 hearing will be conducted on [Gonzalez]'s [second] expert to determine what independent

A-2334-24

opinions are his, if any, and not those of [the first expert]."  Citing <u>Meisels</u>, 240 N.J. at 300, the order excluded the second expert's "opinion an attorney has a duty to investigate the source of funds to close [a] transaction."

In November 2024, defendants moved for summary judgment, arguing the court should bar Gonzalez's damages claim, namely, recoupment of the fees expended in the federal litigation, because the second expert rendered a net opinion.  Defendants pointed out the expert did not assess the reasonableness of the fees and quantify the damages.

The motion judge made oral findings on December 6, 2024.  He concluded neither of the second expert's reports indicated he reviewed Gonzalez's legal bills.  Instead, the expert based his opinion on the initial retainer Gonzalez paid for the federal litigation and the fact he was billed on an hourly basis, but "did not provide an exact figure."  The expert then opined, "to the extent . . . the legal fees incurred were reasonable and necessary for [Gonzalez's] defense[,] they qualify as damages.  These damages are legally recoverable in the instant legal malpractice action."

The judge concluded the expert's failure to review the legal fees was fatal because he had to analyze if they were reasonable and customary for them to count as damages.  This was a complex case, which required the expert to

competently explain to a jury what the damages were, but the expert rendered a net opinion instead. Although the judge barred Gonzalez's expert from testifying regarding damages, he declined to grant defendants summary judgment because he did not know if Gonzalez had another means to adduce the bills into evidence to prove damages. The judge deferred his final decision and permitted the parties to file supplemental submissions to address this issue.

On January 31, 2025, the motion judge heard oral argument to address whether damages could be established without an expert opinion. Even though the jury would hear the total amount of fees Gonzalez incurred in the federal litigation and DiBello's hourly rate, it would not be able to determine the reasonableness of the billing. An expert was required to establish the damages and explain to the jury Gonzalez's lost benefit of the bargain, including what income he lost by not purchasing the dealership. The common knowledge exception did not apply.

Gonzalez's counsel argued the case could not be dismissed because Gonzalez paid DiBello a $5,000 initial retainer, which the expert quantified and discussed in his report. The judge accepted the argument Gonzalez paid the retainer and received "trouble and malpractice." However, an expert was still necessary to opine on the reasonableness of the amount. On February 20, 2025,

the judge entered an order granting defendants summary judgment and dismissing the case with prejudice.

I.

Gonzalez contends the motion judge erred when he applied the exceptional circumstances standard to decide whether to grant another extension of discovery because the good cause standard applied. Motions to extend discovery are timely when "made returnable prior to the conclusion of the applicable discovery period." R. 4:24-1(c). Discovery may be extended for "good cause" prior to the setting of an arbitration or trial date. R. 4:24-1(c); Tynes v. St. Peter's Univ. Med. Ctr., 408 N.J. Super. 159, 168 (App. Div. 2009). Once "an arbitration or trial date is fixed," motions to extend discovery are only permitted if "exceptional circumstances are shown." R. 4:24-1(c); Szalontai v. Yazbo's Sports Cafe, 183 N.J. 386, 396-97 (2005). The exceptional circumstances standard does not apply when a court sends administrative notices, setting an arbitration or a trial date before the end of discovery. Hollywood Café Diner, 473 N.J. Super. at 220. "[A]ppellate courts 'generally defer to a trial court's disposition of discovery matters unless the court has abused its discretion or its determination is based on a mistaken understanding

of the applicable law.'" State v. Brown, 236 N.J. 497, 521 (2019) (quoting

Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011)).

The motion judge neither abused his discretion nor applied the wrong

legal standard when he denied the motion to extend discovery. The exceptional

circumstances standard applied because the trial date was not set based on an

administrative notice from the court. The May 2024 order stated the exceptional

circumstances standard would apply in the future because the matter had already

been granted several extensions and had 570 days of discovery.

The July 19, 2024 order correctly found no exceptional circumstances. A

party demonstrating exceptional circumstances must show

> (1) why discovery has not been completed within time
> and counsel's diligence in pursuing discovery during
> that time; (2) the additional discovery or disclosure
> sought is essential; (3) an explanation for counsel's
> failure to request an extension of the time for discovery
> within the original time period; and (4) the
> circumstances presented were clearly beyond the
> control of the attorney and litigant seeking the
> extension of time.
>
> [Kronfeld v. Malone, 482 N.J. Super. 474, 487 (App.
> Div. 2025) (quoting Hollywood Café Diner, 473 N.J.
> Super. at 217 (emphasis omitted)).]

Gonzalez was never precluded from taking discovery. Depositions were

taken along with prodigious amounts of paper discovery. Gonzalez sought the

extension of discovery to provide yet another expert report where he had already taken three proverbial bites at the apple, in the form of one report from the first expert and two from the second. Defendants' ability to convince the judge of the deficiencies in each report is not a valid reason to extend discovery, nor does it demonstrate the issue was beyond counsel's control, requiring a discovery extension. If any party was disadvantaged it was the defense, which had to cancel the second expert's deposition due to Gonzalez's attempt to submit what would have been a fourth expert report on the eve of the expert's deposition. The record shows Gonzalez did not meet any of the <u>Hollywood Café Diner</u> factors. Thus, no additional explanation from the judge was necessary.

## II.

Gonzalez argues the Rule 104 hearing the judge promised never happened and was necessary to resolve whether expert testimony was required to prove his claims. The hearing would show the expert's opinion on causation and damages was his own, based on the evidence, and not a net opinion.

Gonzalez also asserts the judge misconstrued the law when he held the expert did not analyze the legal fees and explain whether they were reasonable. The fees he incurred were the consequential damages of the malpractice,

whereas the reasonableness of an attorney's fees is only an issue in the context of a fee-shifting case.

N.J.R.E. 104(a)(1) requires a court to "decide any preliminary question about whether a witness is qualified . . . or evidence is admissible." A judge "should conduct a [Rule] 104 hearing if the parties' written submissions are insufficient to allow a decision to be made on these issues." Garden Howe Urb. Renewal Assocs., LLC v. HACBM Architects Eng'rs Planners, LLC, 439 N.J. Super. 446, 459 (App. Div. 2015).

A court's decision to determine admissible issues is subject to review for an abuse of discretion and will be deferred to unless based on a mistaken understanding of law. Pomerantz Paper Corp., 207 N.J. at 371. Motion judges must ensure expert opinions are not net opinions. Id. at 372. A net opinion is one which "has no support in factual evidence or similar data," and "is not admissible and may not be considered." Ibid. "The admissibility rule has been aptly described as requiring . . . the expert 'give the why and wherefore' that supports the opinion, 'rather than a mere conclusion.'" Ibid. (quoting Polzo v. Cnty. of Essex, 196 N.J. 569, 583 (2008)).

The Supreme Court has held "if an expert cannot offer objective support for [their] opinions, but testifies only to a view about a standard that is 'personal,'

[the expert's opinion] fails because it is a mere net opinion." Id. at 373. When an expert's opinion revolves around an element a party must prove and the opinion is unsupported by the record or is a speculative conclusion, the opinion should not be allowed to satisfy the element. Townsend v. Pierre, 221 N.J. 36, 55 (2015). When an evidentiary issue is brought up at the same time as a motion for summary judgment, the evidentiary issue must be resolved first. Id. at 53.

We discern no error in the lack of a 104 hearing. The hearing was ordered in the event the matter proceeded to trial to ensure the second expert's opinion was his own. This became unnecessary because the report was ultimately found deficient as it failed to assert anything other than an unsupported legal conclusion about the damages. In other words, the second expert's opinion was fatally flawed for reasons other than its reliance on the first expert's opinion.

We discern no reversible error regarding the net opinion ruling. The second expert conceded he did not review any of defendants' bills yet opined "[t]o the extent that the legal fees . . . incurred were reasonable and necessary for [Gonzalez's] defense, they qualify as damages." Neither of the expert's reports provided law or facts to support this conclusion.

"Actual damages . . . are real and substantial as opposed to speculative." Grunwald v. Bronkesh, 131 N.J. 483, 495 (1993). "[A]n attorney is only

responsible for a client's loss if that loss is proximately caused by the attorney's legal malpractice," namely, the negligence is "a substantial contributing factor in causing the loss." 2175 Lemoine Ave. Corp. v. Finco, Inc., 272 N.J. Super. 478, 487 (App. Div. 1994). The client's burden is to show through "competent, credible evidence, 'what injuries were suffered as a proximate consequence of the attorney's breach of duty.'" Cortez v. Gindhart, 435 N.J. Super. 589, 604 (App. Div. 2014) (quoting 2175 Lemoine Ave., 272 N.J. Super. at 488). A client's "burden is not satisfied by mere 'conjecture, surmise[,] or suspicion.' Ordinarily, the measure of damages is what result the client would have obtained in the absence of attorney negligence." Ibid. (citation omitted) (quoting 2175 Lemoine Ave., 272 N.J. Super. at 488).

In regard to defendant's billing, if the measure of Gonzalez's damages is that he would not have been sued, then it was incumbent on his expert to show what portion of the legal fees he incurred were tied to the malpractice, causing Zemel to sue him. Anyone can be sued. However, if Gonzalez's damages were 100% of defendant's fees, a jury would need to know if all the fees were caused by, and related to, the malpractice. The absence of the expert's analysis of the bills would lead a jury to treat Gonzalez's claim akin to a claim for liquidated damages rather than a compensatory damages claim, which would be tantamount

18

to speculation, because the jury would not be awarding the "actual damages." Grunwald, 131 N.J. at 495.

For these reasons, we conclude the judge's net opinion ruling was neither an abuse of discretion nor a mistaken application of law.  Gonzalez's remaining arguments in this vein lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

### III.

Gonzalez asserts, even though the judge initially denied defendants summary judgment due to disputed material facts, he later erred when he granted summary judgment because, although his expert was barred, the facts were still in dispute.  The fact there was an out-of-pocket loss of $300,000 based on the record evidence created a material dispute in fact, which should have survived summary judgment and been left for a jury to decide.

Gonzalez argues the judge should have granted him summary judgment because there was no dispute DiBello violated RPCs 1.4, 1.1(a), and 1.7, which was sufficient evidence of malpractice.  He claims the judge made no findings of fact and conclusions of law on his summary judgment motion, as well as generally throughout the case.

A-2334-24

The judge similarly erred when he dismissed the breach of fiduciary duty claim without findings. This claim was separate from the negligence-based malpractice claim because it involved an intentional act. Gonzalez alleges it was wrong to dismiss the claim because DiBello knew the seller agreements prohibited Korchmar's involvement, yet she failed to investigate or disclose this issue to Gonzalez to enable him to make informed decisions.

A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). The court must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

"To decide whether a genuine issue of material fact exists, the trial court must 'draw[] all legitimate inferences from the facts in favor of the non-moving party.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (alteration in original) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016)). "The court's

20

function is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021) (quoting Brill, 142 N.J. at 540). "If there is no genuine issue of material fact, [the court] must then 'decide whether the trial court correctly interpreted the law.'" DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007)).

"Summary judgment should be granted . . . 'after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Friedman, 242 N.J. at 472 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). However, summary judgment is not meant to "shut a deserving litigant from [their] trial," Brill, 142 N.J. at 540 (quoting Judson v. Peoples Bank & Tr. Co., 17 N.J. 67, 77 (1954)), nor is it appropriate when discovery is incomplete and critical facts are within the moving party's knowledge, Friedman, 242 N.J. at 472.

A party opposing summary judgment must provide evidence "beyond mere speculation and fanciful arguments." Cortez, 435 N.J. Super. at 605

(quoting Hoffman v. Asseenontv.com, Inc., 404 N.J. Super. 415, 426 (App. Div. 2009)) (internal quotation marks omitted). "[C]onclusory and self-serving assertions by one of the parties are insufficient to overcome the motion." Puder v. Buechel, 183 N.J. 428, 440-41 (2005). "If the evidence [submitted by the non-movant] is merely colorable or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (citations omitted). Bare conclusions, "without factual support in tendered affidavits, will not defeat a meritorious application for summary judgment." Brae Asset Fund, L.P. v. Newman, 327 N.J. Super. 129, 134 (App. Div. 1999) (quoting U.S. Pipe & Foundry Co. v. Am. Arb. Ass'n, 67 N.J. Super. 384, 399-400 (App. Div. 1961)).

We review the trial court's grant or denial "of a motion for summary judgment de novo, applying the same standard used by the trial court." Samolyk v. Berthe, 251 N.J. 73, 78 (2022). On de novo review, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019) (alteration in original) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

Legal malpractice claims require a plaintiff to establish: "(1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney, (2) the breach of that duty by the defendant, and (3) proximate causation of the damages claimed by the plaintiff." Gilbert v. Stewart, 247 N.J. 421, 442-43 (2021) (quoting Nieves v. Off. of Pub. Def., 241 N.J. 567, 583 (2020)). Damages are typically "awarded on the basis of economic loss." Nieves, 241 N.J. at 583. Such claims are "grounded in the tort of negligence." McGrogan v. Till, 167 N.J. 414, 425 (2001).

Ordinarily, courts use the "suit within a suit" approach to determine if a plaintiff's malpractice damage claims are met. Garcia v. Kozlov, Seaton, Romanini & Brooks, P.C., 179 N.J. 343, 358 (2004). This requires a plaintiff to "prove, by a preponderance of the evidence that: '(1) [they] would have recovered a judgment in the action against the main defendant, (2) the amount of that judgment, and (3) the degree of collectibility of such judgment.'" Carbis Sales, Inc. v. Eisenberg, 397 N.J. Super. 64, 85 (App. Div. 2007) (quoting Garcia, 179 N.J. at 358). The approach is meant to be flexible when a party was a defendant in the underlying suit. Id. at 86. Therefore, "it is 'within the discretion of the trial judge as to the manner in which the plaintiff may proceed

to prove his claim for damages.'" Ibid. (quoting Lieberman v. Emps. Ins. of Wausau, 84 N.J. 325, 343 (1980)).

Alternatively, a party may obtain an expert to establish the causation element of an attorney's alleged malpractice. Morris Props., Inc. v. Wheeler, 476 N.J. Super. 448, 460 (App. Div. 2023). Under this approach, if a party fails to present an expert on the issue or the expert's opinion is a net opinion, then the party cannot establish the elements of legal malpractice and the claim fails. Id. at 463; see Townsend, 221 N.J. at 54-55. In Morris Properties, we rejected the plaintiff's argument summary judgment was improper when a party could have proceeded without expert testimony because it "would have the effect of barring summary judgment in nearly every legal-malpractice case, [which] confuse[d] a procedural trial framework with [the] plaintiffs' prima facie burden." 476 N.J. Super. at 463.

The scope of an attorney's duty of care in a transaction is "to exercise that degree of reasonable knowledge and skill that lawyers of ordinary ability and skill possess and exercise." St. Pius X House of Retreats v. Diocese of Camden, 88 N.J. 571, 588 (1982). Alleged violations of an RPC do not create a cause of action because the RPCs are meant to guide attorneys to help regulate their

conduct and ensure high levels of integrity in the legal profession. Baxt v. Liloia, 155 N.J. 190, 197-99, 204 (1998).

Plaintiffs must present expert testimony in legal malpractice cases "where the matter to be addressed is so esoteric that the average juror could not form a valid judgment as to whether the conduct of the professional was reasonable." Sommers v. McKinney, 287 N.J. Super. 1, 10 (App. Div. 1996). Expert testimony is not required where the duty of care owed is "so basic that it may be determined by the court as a matter of law." Ibid. These cases "involve[] situations where the carelessness of the defendant is readily apparent to anyone of average intelligence and ordinary experience." Rosenberg v. Cahill, 99 N.J. 318, 325 (1985).

We reject Gonzalez's contention he was entitled to summary judgment. Without the aid of an expert, the record does not support the notion it would be readily apparent a juror of average intelligence would be able to decide whether there was malfeasance. The judge did not err in finding expert testimony was required and then denying Gonzalez's motion for summary judgment.

Summary judgment was properly granted to defendants because Gonzalez could not prove the causation-damages element of his malpractice claim. Gilbert, 247 N.J. at 442-43. As we noted in section II, the lack of a 104 hearing

was not error because at summary judgment, the issue was not whether Gonzalez's second expert's opinions were his own, but whether they were conclusory and lacked factual support. The effect of the judge having properly barred the expert's opinion was Gonzalez could not rely upon the expert's opinion to establish causation-damages. Morris Props., 476 N.J. Super. at 463.

Even without an expert, Gonzalez could not have proceeded under the "suit within a suit" approach because he could not show he would have recovered in the underlying judgment. Carbis Sales, 397 N.J. Super. at 85. The facts show defendants had nothing to do with Gonzalez entering the agreements, which spawned the federal lawsuit. Gonzalez did not have an underlying recoverable judgment because he, along with DiBello, was dismissed from the federal case. Therefore, summary judgment was properly granted.

Finally, we reject Gonzalez's argument the breach of fiduciary duty claim should have survived summary judgment. The claim was properly dismissed because it duplicated the malpractice claim. Both the legal malpractice and breach of fiduciary duty counts in Gonzalez's complaint read identically as follows:

> Defendants negligently represented . . . Gonzalez by, among other things failing to properly advise . . . Gonzalez of all risks of his involvement with the [p]urchase especially as related to the [a]mendment of

[a]greements, which was negotiated prior to . . . Gonzalez having any legal representation in the [p]urchase.

Our de novo review of the record convinces us the breach of fiduciary duty claim would fail for the same reasons as the malpractice claim, specifically because Gonzalez cannot establish on both causation or damages. See Cortez, 435 N.J. Super. at 608 (affirming summary judgment dismissal of the plaintiff's breach of fiduciary duty because it was based on the same facts as the legal malpractice claim and "failed to distinguish the breach of fiduciary duty claim from his legal malpractice claim").

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

27